

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2006

# Sukamto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2971

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Sukamto v. Atty Gen USA" (2006). *2006 Decisions*. Paper 1224.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1224

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2971

———

HERY SUKAMTO,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(INS No. A96-264-094)

———

Submitted Under Third Circuit LAR 34.1(a)
April 18, 2006

Before:  SLOVITER, AMBRO, and MICHEL[*], Circuit Judges

(Filed: April 25, 2006 )

———

OPINION

---

[*]  Hon. Paul R. Michel, Chief Judge of the United States
Court of Appeals for the Federal Circuit, sitting by
designation.

MICHEL, <u>Chief Judge</u>.

This is a petition for review of a decision of the Board of Immigration Appeals denying an application for asylum and withholding of removal. We deny the petition.

**I**

Hery Sukamto is an ethnic Chinese, a practicing Christian, and a citizen of Indonesia. Mr. Sukamto entered the United States on a F1 student visa on November 22, 2000, but decided not to enroll at the designated university, the University of Houston, and remained in the United States illegally. Two-and-a-half years later, Mr. Sukamto wished to enroll in school, but was informed by a university admissions official that, because of his immigration status, he could not attend school in the United States without first returning to Indonesia. Instead, on March 24, 2003, Mr. Sukamto affirmatively applied for asylum and withholding of removal.

Mr. Sukamto stated in his asylum application that he sought withholding based on his race, religion, and membership in a particular group. He indicated in his asylum application that he had been harmed in the past and that he feared being harmed and subjected to torture if he was to return to Indonesia. In an accompanying affidavit, Mr. Sukamto stated that because he is of Chinese descent, he is a minority in Indonesia and is "labeled as 'non-native' or [a] 'second-class citizen[].'" For example, Mr. Sukamto stated that he is frequently asked to prove his citizenship status even though he was born in Indonesia. As specific acts of past harm, Mr. Sukamto referenced a looting of his

2

grandfather's store and beating suffered by his grandfather during Indonesian riots in 1965, allegedly witnessed by his mother. He recounted that, while in high school, a Muslim teacher once questioned him publicly and rudely about Christianity. He recalled that his Muslim classmates stole his stationery, hat, and school tie, and called him names on a daily basis. He stated that on one occasion, when he burned his money rather than giving it to a Muslim classmate, he was beaten in the stomach.

Mr. Sukamto also claimed three more recent incidents of harm. First, Mr. Sukamto stated that in September 1996, the gate to his parents' home was damaged by two groups fighting at a nearby political gathering, and surmises that his family was targeted because they are of Chinese ethnicity. Second, he recounted that the neighborhood chief threatened him and his uncle with a "large saber" and accused the Sukamto family of creating noise disturbances by virtue of the "cracker" business that the family operated out of their home. Third, Mr. Sukamto suspects that his parents' plumbing system was damaged in July 2000 by neighborhood Muslims, who also allegedly stole water from them during the "dry season", but concedes that he lacks evidence to prove this claim.

After interviewing Mr. Sukamto, an asylum officer referred Mr. Sukamto's application to the Immigration Judge ("IJ"). On May 8, 2003, the former Immigration and Naturalization Service (now part of the Department of Homeland Security, see Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002)),

3

issued a Notice to Appear commencing removal proceedings pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA").

At the Master Calendar Hearing on June 19, 2003, Mr. Sukamto admitted that he had entered the United States on a F1 visa, had not enrolled in school, and had remained in the United States illegally, and conceded removability under the INA. He was released pending an asylum hearing. Following his asylum hearing on January 7, 2004, the IJ issued an oral decision denying Mr. Sukamto's applications for asylum, withholding of removal, and withholding under the United Nations Convention Against Torture.

The IJ found that Mr. Sukamto failed to file for asylum within the one year period prescribed by 8 U.S.C. § 1158(a)(2)(D) and that the excuse offered by Mr. Sukamto, that he relied on misinformation from his friends, did not constitute an "extraordinary reason" justifying waiver of the deadline. The IJ also found that Mr. Sukamto was neither subjected to persecution nor had a well-founded fear of persecution. Rather, the IJ concluded that Mr. Sukamto departed from Indonesia to pursue educational and economic opportunities in the United States. The IJ granted Mr. Sukamto voluntary departure until March 8, 2004, with an alternate order of removal to Indonesia.

Mr. Sukamto timely appealed the decision to the Board of Immigration Appeals ("BIA"). On May 26, 2005, the BIA issued a per curiam order dismissing Mr. Sukamto's appeal and "adopted and affirmed" the IJ's on-the-record oral decision. The BIA acknowledged that Mr. Sukamto suffered some discrimination and harassment in

4

Indonesia, but held that these two factors alone do not constitute "persecution" within the meaning of the INA. Because Mr. Sukamto failed to post the voluntary departure bond ordered by the IJ, the BIA vacated the grant of voluntary departure.

Mr. Sukamto timely petitioned to this court. Because Mr. Sukamto raises only a factual challenge to the BIA determination that there were not extraordinary circumstances warranting waiver of the one year time limitation for asylum applications, we lack jurisdiction over that portion of his petition for review. See Sukwanputra v. Gonzales, 434 F.3d 627, 633-34 (3d Cir. 2006). Under Section 242(a) of the INA, 8 U.S.C. § 1252(a), however, we do have jurisdiction over the withholding of removal.

## II

To successfully petition for withholding of removal, an alien must "show that if returned to his country, it is more likely than not that the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Amanfi v. Ashcroft, 328 F.3d 719, 726 (3d Cir. 2003). Where the BIA issues an order on the merits rather than a summary affirmance, we review the decision of the BIA, not the IJ. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002). Here, because the BIA "adopted and affirmed" the findings of the IJ, we also review the findings of the IJ as incorporated by reference into the BIA decision. Id. Pursuant to 8 U.S.C. § 1252(b)(4)(B), "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."

5

In this petition, Mr. Sukamto argues that a reasonable adjudicator would be compelled to conclude that he was subjected to persecution and that he demonstrated a clear probability that he would face persecution or torture upon return to Indonesia. We disagree. The IJ cited specific, cogent reasons for concluding that Mr. Sukamto was neither subjected to persecution nor had a well-founded fear of persecution or torture, and responded thoroughly to each of Mr. Sukamto's claims.

The IJ concluded that Mr. Sukamto's true motive for coming to the United States was "to pursue educational and economic opportunities", citing as support Mr. Sukamto's F1 visa status upon admission and his testimony that he came to the United States to attend school, but decided one week after arriving that his family would be better served by financial assistance he could provide through employment here. The IJ additionally cited Mr. Sukamto's testimony that he began working one month after his arrival in the United States and that he applied for asylum only after learning from a university admissions official that, because of his immigration status, he could not attend school in the United States without first returning to Indonesia, which he could not afford to do.

The IJ found that Mr. Sukamto was unlikely to suffer harm upon returning to Indonesia. The IJ emphasized Mr. Sukamto's testimony that his mother wished for him to return to Indonesia and his inability to explain "why a mother would wish a son to return home if he faced the likelihood of persecution." The IJ considered Mr. Sukamto's testimony of past discrimination and harassment, but categorized as "no more than

6

speculation" Mr. Sukamto's testimony that he feared that his parents' home would suffer property damage during an upcoming political election. The IJ noted that conditions in Indonesia have not worsened for persons in Mr. Sukamto's status, and cited the United States Department of State's <u>International Religious Freedom Report</u> for Indonesia for 2002, which in fact shows improved inter-ethnic and inter-religious relations between Chinese, Christians, and native Muslims in Indonesia. The BIA acknowledged that Mr. Sukamto had suffered some discrimination and harassment in Indonesia, but correctly held that these two factors alone do not constitute "persecution" within the meaning of the INA. Based on the IJ's findings, the BIA correctly held that Mr. Sukamto "was not detained, harmed, or threatened by the government, or by persons a government is unwilling or unable to control, on account of a protected ground" and correctly concluded that Mr. Sukamto "failed to show that he more likely than not would be tortured."

Because Mr. Sukamto has not pointed to evidence that would compel a reasonable adjudicator to conclude that he was subjected to persecution, and has not demonstrated a clear probability that he would face persecution or torture upon return to Indonesia, the petition for review is denied.