

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2006

# Hartono v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3290

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Hartono v. Atty Gen USA" (2006). *2006 Decisions.* Paper 925.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/925

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3290

EDDY HARTONO,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                    Respondent

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A96-261-142

Submitted Under Third Circuit LAR 34.1(a)
May 11, 2006

Before: BARRY, SMITH and TASHIMA,[*] Circuit Judges

(Opinion Filed: June 9, 2006 )

OPINION

_____

[*] The Honorable A. Wallace Tashima, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

BARRY, <u>Circuit Judge</u>

The Board of Immigration Appeals ("BIA") affirmed and adopted the decision of an immigration judge ("IJ") denying Eddy Hartono's application for withholding of removal to Indonesia and dismissed his appeal from the IJ's finding that his asylum application was time-barred. We will deny his petition for review.

Hartono, who is a Christian and ethnically Chinese, is a native and citizen of Indonesia. In Indonesia, he was harassed and threatened on a handful of occasions over several years by members of the Muslim native majority. In 1991, when he was in high school, six Muslims robbed him at knife point and hit him. In 1996, a crowd of Muslim soccer fans shouting anti-Chinese slurs stopped the van in which he was riding, broke off its outside mirror, and demanded money. Nearby police did not interfere and his family had to pay a bribe to file a written police report. Although he hid safely during the 1998 anti-Chinese riots, he was robbed twice in July 1998. In August 1998, a group of Muslims surrounded his aunt's home and threatened her, but dispersed when the police were called.

Hartono entered the United States on October 30, 1999 on a non-immigrant visitor for pleasure visa. On August 25, 2000, he was approved for student status and began a program of studies at the Community College of Philadelphia. He violated this status after May 31, 2001 by no longer attending school, instead working as a delivery driver. On March 12, 2003, he filed an application for asylum. The Department of Homeland Security responded by serving him with a Notice to Appear, alleging that he had

2

remained in the United States beyond the expiration of his authorization and was therefore removable. He conceded removability and requested asylum, withholding of removal, and withholding of removal under the Convention Against Torture ("CAT"). A hearing was held on December 29, 2003. Hartono was the sole witness; he testified to some, though not all, of the incidents described above. He also offered a large number of documents and news articles about events in Indonesia.

At the close of the hearing, the IJ issued an oral opinion. She stated, "Respondent's claim, based on his written statements, his I-589, and testimony in significant and relevant part, is that he will be harmed if returned to Indonesia because country conditions have worsened for ethnic Chinese and Christians since he left there . . . ." She cited sources in the record indicating that Chinese/native Indonesian relations were improving and that Surabaya, his home, was not particularly dangerous. She then stated:

> "And thus, respondent has failed to show country conditions in Indonesia have worsened for Chinese and Christians, thereby establishing a well-founded fear, that is assuming that he was eligible for asylum. However, these country conditions further fail to provide sufficient proof of changed country conditions that would allow the Court to waive the one-year filing deadline for asylum. Thus, the evidence fails to establish that it is more likely than not that respondent would be harmed if he returned to Indonesia because of his ethnicity and because of his religion. . . . Based on the foregoing, the respondent has failed to establish a claim for relief, being ineligible statutorily for asylum and failing to satisfy a higher burden and showing that it is more likely than not that he would be harmed if he returned to Indonesia."

She found that Hartono was statutorily ineligible for asylum because he had failed to

3

apply within one year of his arrival in the United States and had not shown changed circumstances affecting his eligibility.  See 8 U.S.C. § 1158(a).  She denied withholding of removal and withholding under CAT, and granted Hartono voluntary departure.

Hartono appealed to the BIA, which, on June 3, 2005, adopted and affirmed the IJ's decision in a *per curiam* opinion, specifically approving her findings that Hartono's asylum application was untimely and that he had failed to qualify for an exception to the one-year bar.  The BIA also permitted voluntary departure.  Hartono filed a timely petition for review on July 1, 2005.

We lack jurisdiction over Hartono's asylum claim.  As provided in 8 U.S.C. § 1158(a)(3), no court has jurisdiction to review the BIA's determination that an asylum application was untimely and not excused by changed or extraordinary circumstances. See Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006).  We do, however, have jurisdiction to review Hartono's withholding of removal and CAT withholding claims.  8 U.S.C. § 1252.  Where, as here, the BIA defers to an IJ's opinion, we review the decision of the IJ as though it were the decision of the BIA.  Abdulai v. Ashcroft, 239 F.3d 542, 548-49 (3d Cir. 2001).  Ordinarily, we review the BIA's legal determinations de novo. Zheng v. Gonzales, 422 F.3d 98, 108 (3d Cir. 2005).  We review the BIA's findings of fact under the substantial evidence standard.  Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).  "[T]he BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it."  Id.

An alien may not be removed to a country "if the Attorney General decides that

4

the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Implementing regulations spell out a sequential process by which an IJ must make this determination. First, if the applicant has been persecuted in the past on account of one of the protected grounds, "it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal." 8 C.F.R. § 208.16(b)(1)(i). This presumption may be rebutted either by a showing of a "fundamental change in country circumstances," id. § 208.16(b)(1)(i)(A), or by a showing that the applicant could reasonably and safely relocate to another part of the country, id. § 208.16(b)(1)(i)(B). On the other hand, if the applicant does not show past persecution, he may show the necessary likelihood of persecution either by showing that he would be "singled out individually for such persecution," id. § 208.16(b)(2), or that "there is a pattern or practice of persecution of a group of persons similarly situated to the applicant" on one of the protected grounds making it more likely than not that he would be persecuted if returned, id. § 208.16(b)(i) and (b)(ii).

Hartono did not suffer persecution in Indonesia. Although he testified about a few of the incidents of harassment and his I-589 referred to events that he claimed constituted "HARM MISTREATMENT THREATS," there was simply no evidence of "persecution" as that term is defined in our cases. See, e.g., Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993) ("'[P]ersecution' is an extreme concept that does not include every sort of treatment our society regards as offensive.") Hartono was robbed and taunted on a few

5

occasions over a period of years, but not seriously harmed, either physically or mentally, if he was harmed at all. On this point, the IJ's decision, while succinct, was sufficient. Implicit in her focus on the claim of future persecution if Hartono were to be returned to Indonesia was the finding that he had not made a showing of past persecution that would entitle him to a presumption of future persecution. Indeed, it appears to us that Hartono did not claim that his past treatment amounted to persecution, relying instead on the alleged likelihood of future persecution.

Similarly, Hartono did not show that he will likely be "singled out" for future persecution were he to return to Indonesia, or that in Indonesia ethnic Chinese Christians are subjected to a pattern or practice of persecution; indeed, his testimony in those regards was weak in the extreme. Moreover, the IJ found that conditions for ethnic Chinese and Christians have actually improved, a finding supported by the documentary evidence. Substantial evidence supported the IJ's determination that Hartono was not eligible for withholding of removal.

The IJ's conclusion that Hartono's CAT claim should be denied is more easily sustainable, not because her findings are more extensive, but because the implementing regulations impose fewer specific requirements. The applicant bears the burden of proof of showing that "it is more likely than not that he or she would be tortured if removed." 8 C.F.R. § 208.16(c)(2). The IJ is to consider a non-exclusive list of relevant evidence, id. § 208.16(c)(3), and "shall first determine whether the alien is more likely than not to be tortured in the country of removal," id. § 208.16(c)(4). Here, the IJ found that Hartono

6

had "fail[ed] to satisfy a higher burden and showing that it is more likely than not that he would be harmed if he returned to Indonesia." Because acts that constitute "torture" also constitute "harm," see 8 C.F.R. § 208.18(a)(1) (torture requires "severe pain or suffering"), this finding addressed the issue the IJ was required to address. It was also amply supported by the evidence. None of the past acts Hartono described even remotely approached the "extreme form of cruel and inhuman treatment," 8 C.F.R. § 208.18(a)(2), that would constitute torture, and he suffered minimal, if any, injury. Similarly, none of the additional evidence he introduced indicated that he faced a "more likely than not" chance of being tortured if returned. Substantial evidence supports the IJ's determination that Hartono failed to establish eligibility for CAT relief.

The petition for review will be denied.

7