

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-27-2006

# Mahi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2730

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Mahi v. Atty Gen USA" (2006). *2006 Decisions.* Paper 690.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/690

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-2730

_____

MADAN SINGH MAHI,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of the Order of the
Board of Immigration Appeals
(Agency No. A76 105 715)
Immigration Judge Donald Ferlise

_____

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2006

Before: BARRY, CHAGARES AND COWEN, <u>CIRCUIT JUDGES</u>

(Filed: July 27, 2006)

_____

OPINION

_____

PER CURIAM

Madan Singh Mahi, a native and citizen of India, petitions for review of an order

of removal of the Board of Immigration Appeals ("BIA").  We will deny the petition.

In his removal proceedings, Mahi conceded, through counsel, that he is removable

for being present in the United States without being admitted or paroled.  See 8 U.S.C. § 1182(a)(6)(A).  Mahi applied for asylum, withholding of removal, and relief under the Convention Against Torture.  The Immigration Judge ("IJ") found Mahi ineligible for asylum because Mahi did not establish that he filed his asylum application within one year of when he entered the United States.  The IJ considered Mahi's applications for withholding of removal and relief under the Torture Convention.

Mahi testified that his religion is Sikh.  In 1994, Mahi joined the Shiromani Akali Dal (Mann) political party, the goal of which was an independent state of Khalistan for the Sikhs.  Mahi gave speeches and tried to recruit new party members.  Mahi claims that the local police in Punjab beat him on three occasions due to his party activities.

The first incident occurred in 1994 when the police took Mahi from his home and accused him of supporting the party.  Mahi testified that the police beat him at the police station with bamboo sticks and a leather belt on his arms, legs, and back.  Mahi stated that the police detained him for four days and questioned him about his party activities.  Mahi's father and the local village council helped with his release.

Mahi continued his party activities.  Approximately two years later, in February 1996, the police arrested Mahi's cousin, a member of the All-India Sikh Student Federation, and charged him with supplying ammunition to radicals.  The police detained his cousin for five days and then killed him.  Mahi stated that when he learned about his cousin's death, he, his uncle, his father, and other party members went to the police

2

station and asked for the body. The police refused to give it to them. Mahi believed that the police burned the body because they wanted to conceal evidence that he was beaten.

After Mahi was unable to obtain his cousin's body, he protested at the police station with his father, uncle, and party members. As a result, the police beat Mahi, his father, and his uncle. Mahi stated that the police beat them because they did not want them to talk about his cousin's death. The police released Mahi's father who then paid the police to release Mahi. The police detained Mahi for eight days and beat him with bamboo sticks and a leather belt on his legs, arms, and ears. Upon his release, Mahi was hospitalized for four days.

Two years later, on January 26, 1998, Mahi took 200 people by truck and trolley to a town to protest unfair treatment by the government. Mahi incited the demonstrators by telling them about his cousin. Mahi was arrested with other party members. Mahi stated that the police beat him with sticks and a leather belt, hung him upside down and pulled his legs, and rolled rollers on his legs. The police told him to stop his party activities. On February 2, 1998, Mahi's father paid the police to release him. Mahi was treated for his injuries at the hospital.

On June 5, 1998, the day before an event that Mahi was organizing, the police raided his home. Mahi was not there, and the police arrested and beat his father. The police wanted his father to bring Mahi to the police station. Mahi did not return home because his father told him the police were looking for him. The police searched the

3

house of his aunt and uncle in an effort to find him. Mahi believed it was too dangerous for him to stay in India. Mahi testified that he could not move to another part of India because the police in his village would be contacted and would arrest him due to his party membership. Mahi fears that, if he returns to India, the Punjab police will kill him.

The BIA adopted and affirmed the decision of the IJ, who found Mahi not credible and denied his applications for relief. The BIA also agreed with the IJ that Mahi had not met his burden to establish the timeliness of his asylum request. In addition, the BIA concluded that, even if Mahi were credible and eligible for asylum, the conditions in India have changed and he no longer has a well-founded fear of persecution. The BIA further found that Mahi could safely relocate in India.

Mahi filed a pro se petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We will review the IJ's opinion to the extent that it was adopted by the BIA. Cham v. Attorney General, 445 F.3d 683, 690 (3d Cir. 2006).

In his brief, Mahi argues that the BIA erred in concluding that he is ineligible for asylum because he did not establish that he filed his asylum application within one year of when he entered the United States. Mahi contends that his testimony established his date of arrival and the timeliness of his application. We lack jurisdiction, however, to review the determination that Mahi did not establish that he timely filed his application. See Sukwanputra v. Gonzales, 434 F.3d 627, 633-34 (3d Cir. 2006) (stating that, with the exception of constitutional claims and questions of law, the Court lacks jurisdiction to

4

review a determination that an asylum application was untimely filed).

Mahi also argues that the IJ erred in concluding that he did not testify credibly. Adverse credibility determinations are reviewed for substantial evidence. Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004). If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence. Id. at 322 (citing Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc)). Conversely, if no reasonable fact finder could make that finding on the administrative record, the finding is not supported by substantial evidence. Id. at 322-23.

The BIA affirmed the IJ's adverse credibility determination based upon Mahi's shifting testimony about the death of his cousin, which gave rise to his own arrest. Mahi initially testified that he went to the police station with his uncle, his father, and members of the All-India Sikh Student Federation and Akali Dal (Mann), and asked for his cousin's dead body. He stated that "[t]he police refused to give us that dead body." A.R. at 151. Later in the hearing, the IJ questioned Mahi further about the incident. First, Mahi testified that the police acknowledged that his cousin died and said that his cousin died in a police encounter. A.R. at 184. He then stated that the police did not tell them that his cousin was killed in an encounter. Rather, they "came to know" about the incident. A.R. at 184.

When the IJ asked Mahi further questions in an effort to clarify his testimony, Mahi again stated that the police said that his cousin was killed in a police encounter.

5

A.R. at 184-85. However, he then stated that he "just came to know that the police killed him," and the police did not acknowledge that they had his cousin in custody. A.R. at 185. Mahi further testified that the police did not acknowledge that they ever had any contact with his cousin or that they killed him. A.R. at 185. Mahi also provided no specific answer when the IJ asked how he came to know that the police killed him. Mahi stated only that "[w]hen the police encounter happened, everybody knows." A.R. at 185.

Mahi contends that he was confused by the IJ's questioning. The IJ, however, gave Mahi multiple opportunities to clarify his testimony about his cousin's death. Mahi also argues that he submitted his cousin's death certificate in support of his claim. The IJ gave little weight to the certificate because Mahi's family supplied the information reflected in the certificate. Although Mahi argues that the certificate was prepared pursuant to the normal procedures for the registration of deaths in Punjab, there is no evidence in the record establishing those procedures.

We conclude that a reasonable fact finder could make an adverse credibility finding on the administrative record. Berishaj, 378 F.3d at 322. In light of this conclusion, we need not address the BIA's additional findings regarding changed conditions in India and Mahi's ability to relocate there. Because the adverse credibility determination is supported by substantial evidence, we will deny the petition for review.

6