

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-19-2006

# Sukwanputra v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-3336

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Sukwanputra v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1669.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1669

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3336

ELLYANA SUKWANPUTRA;
YULIUS SUKWANPUTRA,

Petitioners

v.

ALBERTO GONZALES, ATTORNEY GENERAL
UNITED STATES OF AMERICA*

*Caption amended pursuant to Rule 43(c), Fed. R. App. P.

Respondent

On Petition for Review from an Order of the
Board of Immigration Appeals
(D.C. No. 0313-2: A-79-312-251;
D.C. No. 03-3-2: A-79-312-252)
Immigration Judge: Hon. Donald Vincent Ferlise

Argued October 18, 2005

BEFORE: SCIRICA, Chief Judge, VAN ANTWERPEN and
COWEN, Circuit Judges

(Filed:  January 19, 2006 )

Joseph C. Hohenstein, Esq. (Argued)

1

Orlow and Orlow, P.C.
620 Chestnut Street
Suite 656
Philadelphia, PA 19106

Counsel for Petitioners

Jonathan Potter, Esq. (Argued)
United States Department of Justice
Office of Immigration Litigation
Civil Division
Ben Franklin Station
P.O. Box 878
Washington, DC

Stephen A. Sherman, Esq.
United States Department of Justice
Tax Division
Ben Franklin Station
P.O. Box 55
Washington, DC 20044

Counsel for Respondent

---

OPINION

---

COWEN, Circuit Judge.

Ellyana and Yulius Sukwanputra petition for review of an order of the Board of Immigration Appeals ("BIA") which adopted and affirmed an Immigration Judge's ("IJ") decision denying the application for asylum and withholding of removal pursuant to the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT"). For the reasons stated below, we will grant the petition, vacate the order of the BIA, and remand for further proceedings consistent with this opinion.

I.

Ellyana Sukwanputra and her husband, Yulius Sukwanputra,[1] are natives and citizens of Indonesia. Petitioner claims persecution in Indonesia on account of her Chinese ethnicity and Catholic religion. In support, she relates numerous incidents of persecution spanning a twenty year period from her childhood until the late 1990s. Three of the incidents are relevant to our decision, which we discuss below.

First, Petitioner alleges that in 1985, in her hometown of Malang, a mob of native Indonesians burned down her father's store as part of widespread attacks on Chinese-owned stores. Petitioner, who was a child at the time, allegedly remembers hearing rioters say, "Burn it down, this belong to Chinese!" Despite the widespread destruction and looting, the police and army in Indonesia allegedly did nothing to stop the attacks.

Petitioner claims that similar governmental inaction led to the prolongation of riots in Unjung Pandang in September 1997. Prompted by the prospect of marriage, Petitioner alleges that she and her then-future husband traveled to the Island of Sulawesi, Unjung Pandang, so that she could meet his parents who lived there. Petitioner laments that during their visit, a group of native Indonesians allegedly burned down her husband's family restaurant. Petitioner allegedly recalls hearing the rioters yell, "Burn and kill the Chinese!" After escaping the restaurant, petitioner and her husband stayed at the local police station for two days until the riots ended.

Third, petitioner cites to the massive riots that plagued Jakarta in May 1998. Petitioner asserts that following her graduation from college, she was living in Jakarta looking for employment when massive riots broke out there. Petitioner relates that during the riots many Indonesian women were raped and killed. Petitioner allegedly hid with friends inside a house, but could hear the voices of rioters on the streets and the sounds

---

[1] The application, filed by Ellyana Sukwanputra, seeks refugee status for her husband, Yulius Sukwanputra, as a derivative applicant. Unless otherwise indicated, reference to the singular "petitioner" refers to Ellyana Sukwanputra.

of them beating on the house. Petitioner recalls that after the riots she fled to Malang to stay with her parents.

On May 17, 1999, petitioners entered the United States on non-immigrant visitor's visas. They were authorized to remain in the United States until November 16, 1999, and both overstayed their visas. On June 25, 2001, they were placed in removal proceedings.

## II.

On or about May 4, 2001, petitioner filed an application for asylum and withholding of removal under the INA, and protection under CAT. The case was referred to Immigration Judge Donald Ferlise, who conducted a hearing on the merits. In addition to her own testimony, petitioner presented to the IJ documentary evidence in support of her application. The IJ admitted some of the documents into evidence, including petitioner's written application, her sworn affidavits, and a country package which included the 2001 Department of State Report on Human Rights Practices. However, the IJ refused to give any weight to the following documents: petitioners' birth certificates, their marriage certificate, petitioner's husband's Indonesia identification card, a death certificate for petitioner's brother, and their child's birth certificate. The IJ reasoned that the documents were not certified as required under 8 C.F.R. § 287.6.

On October 28, 2002, the IJ issued a decision denying the application for asylum, withholding of removal, and CAT protection. The IJ found that the asylum application was untimely and that petitioner had failed to establish changed circumstances materially affecting her eligibility for asylum or extraordinary circumstances relating to the delay. The IJ also found that petitioner had not demonstrated entitlement to withholding of removal or protection under CAT. The IJ premised his finding, in part, on the purported implausibility that petitioner was present "at all of these [three] major events even though they were quite far apart in distance." (Decision at 10.) As to these three critical events, the IJ found petitioner's testimony not to be credible. (Decision at 10.)

4

On August 5, 2005, the BIA entered its order affirming and adopting the IJ's decision. The BIA rejected petitioner's claim that the IJ exhibited bias violating their due process rights. The BIA concluded that while some of the IJ's statements were "injudicious," there was insufficient evidence to show that the IJ's conduct prevented petitioner from fully presenting her evidence.

## III.

The BIA's jurisdiction arose under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1).

Insofar as the BIA adopted the findings of the IJ, we must review the decision of the IJ. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001) ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate."). As to matters which the BIA issued its own opinion and did not summarily adopt the findings of the IJ, we must review the decision of the BIA. *Li v. Attorney General*, 400 F.3d 157, 162 (3d Cir. 2005).

## IV.

## A.

Petitioners argue that one-year statutory period of limitations for filing an asylum application provided in 8 U.S.C. § 1158(a)(2)[2] violates the Supremacy Clause of the United States

---

[2] An alien may apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). A tardy application may be considered if the alien demonstrates to the satisfaction of the Attorney General the existence of either of the following circumstances: "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances

Constitution and the Due Process Clause, and that the judicial review bar provided in 8 U.S.C. § 1158(a)(3), which precludes judicial review of determinations of the Attorney General made under 8 U.S.C. § 1158(a)(2), also violates the Due Process Clause. We consider each of these arguments below, under a de novo review. *Abdulrahman v. Ashcroft,* 330 F.3d 587, 595-96 (3d Cir. 2003).

1.

Citing to the Supremacy Clause, petitioners argue that the one-year statutory period of limitations provided in § 1158(a)(2) conflicts with Article 34 of 1951 United Nations Convention Relating to the Status of Refugees ("1951 Convention"). By acceding to the 1967 United Nations Protocol Relating to the Status of Refugees ("1967 Protocol"), the United States agreed to comply with the substantive provisions of the 1951 Convention. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 429 (1987); *INS v. Stevic*, 467 U.S. 407, 416 (1984). However, Article 34 is not self-executing. *See Stevic*, 467 U.S. at 428 n.22. As such, Article 34 provides no enforceable rights beyond those granted by the INA. *See id; Al-Fara v. Gonzalez*, 404 F.3d 733, 743 (3d Cir. 2005). Accordingly, the one-year statutory period provided in § 1158(a)(2) for filing an asylum application does not violate the Supremacy Clause.[3]

2.

relating to the delay in filing an application within the period specified in subparagraph (B)." 8 U.S.C. § 1158(a)(2)(D).

[3] In addition, the one-year statutory period withstands a Supremacy Clause challenge based on the application of the "last in time" rule. *See Kappus v. Comm'r of Internal Revenue*, 337 F.3d 1053, 1057 (D.C. Cir. 2003). Under this rule, "[w]hen a statute conflicts with a treaty, the later of the two enactments prevails over the earlier." *Id.* (citing *Whitney v. Robertson*, 124 U.S. 190, 194 (1888)). Congress added § 1158(a) to the INA as part of the 1980 amendments to that Act. *Cardoza-Fonseca*, 480 U.S. at 427. Thus, § 1158(a)(2) could not unconstitutionally violate the 1967 Protocol, even if it was self-executing.

6

Petitioners' claim that the statutory period of limitations provided in § 1158(a)(2) violates the Due Process Clause is also unavailing. Although the Fifth Amendment entitles aliens to the "the opportunity to be heard at a meaningful time and in a meaningful manner," *Dia v. Ashcroft*, 353 F.3d 228, 238-239 (3d Cir. 2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)), "it d[oes] not violate due process for Congress to impose a reasonable limitations period upon the filing of naturalization petitions." *INS v. Pangilinan*, 486 U.S. 875, 885 (1988). The state "may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations. . . [a]nd . . . certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (internal citations and quotations marks omitted) (emphasis in original).

The one-year period of limitations for filing an asylum application under 8 U.S.C. § 1158(a)(2)(B), which is tempered by the tolling provisions of § 1158(a)(2)(D), provides an asylum applicant an "opportunity to be heard at a meaningful time and in a meaningful manner." *Eldridge*, 424 U.S. at 333 (citation and internal quotation marks omitted). The one-year period is not an unreasonable requirement for triggering the right to an adjudication, and, thus, an alien is not deprived of due process when his or her asylum claim is denied for failure to comply with the requirement. For these reasons, we conclude that the one-year statutory limitations period provided in § 1158(a)(2) does not violate the Due Process Clause.

3.

Petitioners' contention that the judicial review bar of 8 U.S.C. § 1158(a)(3) violates the Due Process Clause likewise lacks merit. "Deportation is not a criminal proceeding and has never been held to be punishment . . .[, and thus] [n]o judicial review is guaranteed by the Constitution." *Carlson v. Landon*, 342 U.S. 524, 537 (1952). Rather, "[t]he power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, with such opportunity for

7

judicial review of their action *as congress may see fit to authorize or permit.*" *Id.* (internal quotation marks and citation omitted) (emphasis added). As clearly indicated in 8 U.S.C. § 1158(a)(3), Congress did not authorize an opportunity for judicial review of determinations made by the executive branch regarding the timeliness of an asylum application. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2003). Because judicial review is not constitutionally guaranteed, the judicial review bar of § 1158(a)(3) does not violate the Due Process Clause.

B.

Failing their constitutional arguments, petitioners next challenge the IJ's determination that petitioner did not qualify for an exception to the one-year filing deadline for asylum applications. Pursuant to 8 U.S.C. § 1158(a)(2)(B), an alien must file an asylum application within one year of the date of the alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). A late-filed application may be considered if the alien demonstrates either "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application . . . ." 8 U.S.C. § 1158(a)(2)(D).

Petitioner entered the United States on May 17, 1999, but did not file her asylum application until May 4, 2001. The IJ determined that the asylum application was untimely and that petitioner had failed to establish changed circumstances materially affecting her eligibility for asylum or extraordinary circumstances relating to the delay, as required under 8 U.S.C. § 1158(a)(2)(D) to excuse a failure to meet the one-year deadline. Petitioners contend that the IJ applied the wrong legal standard in making his determination under § 1158(a)(2)(D) that petitioner had failed to demonstrate such changed or extraordinary circumstances. Petitioners posit further that the record evidence reflects the existence of such changed or extraordinary circumstances so as to warrant the late filing. The government contends that pursuant to 8 U.S.C. § 1158(a)(3), this Court does not have jurisdiction to review the IJ's decision relating to the untimeliness of the asylum application.

8

The restriction on judicial review of determinations made by the Attorney General regarding the timeliness of an asylum application is addressed in 8 U.S.C. § 1158(a)(3). That provision states that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)," 8 U.S.C. § 1158(a)(3), which paragraph includes the provision relating to whether an asylum applicant has demonstrated the existence of changed or extraordinary circumstances, 8 U.S.C. § 1158(a)(2)(D). In *Tarrawally*, this Court held that "the language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances." 338 F.3d at 185.

Since our decision in *Tarrawally*, Congress enacted the REAL ID Act of 2005 ("REAL ID Act"). The REAL ID Act authorizes judicial review of constitutional claims and questions of law, notwithstanding any other provision of the chapter which eliminates or limits judicial review. *See* REAL ID Act § 106(a)(1)(A)(iii), adding 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed within an appropriate court of appeals in accordance with this section.").[4] By virtue of § 1252(a)(2)(D), constitutional claims or questions of law raised in a petition for review elude the jurisdiction-stripping provisions of the INA. The effect of this provision is to restore to the court of appeals jurisdiction to review constitutional claims and questions of law.

Despite the special treatment accorded constitutional

---

[4] Section 106(a) of the REAL ID Act took effect on May 11, 2005, and applies to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment. *See* REAL ID Act § 106(b). Thus, even though the final administrative order of removal in this case was issued before the date of the enactment, § 1252(a)(2)(D) applies to this case.

claims and questions of law, § 1252(a)(2)(D) does not exempt factual or discretionary challenges from the jurisdiction-stripping provisions of the INA. Thus, § 1252(a)(2)(D) does not prohibit a court of appeals from construing provisions which limit judicial review, such as § 1158(a)(3), as precluding review of factual or discretionary challenges. Accordingly, we join our sister courts in concluding that despite the changes of the REAL ID Act, factual or discretionary determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review. *Accord Ramadan v. Gonzalez*, 427 F.3d 1218, 1222 (9th Cir. 2005); *Chacon-Botero v. U.S. Atty. Gen.*, 427 F.3d 954, 957 (11th Cir. 2005); *Vasile v. Gonzalez*, 417 F.3d 766, 768 (7th Cir. 2005).

Mindful of these jurisdictional concerns, we now turn to the issues presented in this petition for review. Here, petitioners first contend that the IJ applied the wrong legal standard in making his determination under 8 U.S.C. § 1158(a)(2)(D) whether petitioner had established changed or extraordinary circumstances excusing her untimely application. Petitioners posit that the IJ should have applied a "benefit of the doubt" standard. As to this particular issue, we do not need to decide whether this issue raises a "constitutional claim[ ] or question[ ] of law" to which our jurisdiction extends under 8 U.S.C. § 1252(a)(2)(D), since, as explained below, we find the argument to be wholly without merit.

In support of their argument for a "benefit of the doubt" standard, petitioners cite to the Handbook on the Procedures and Criteria for Determining Refugee Status, issued by the Office of the United Nations High Commissioner for Refugees ("UNHCR Handbook"). The UNHCR Handbook, in relevant part, describes the difficulty of proof inherent in an asylum seeker's situation. UNHCR Handbook ¶ 196. To account for this difficulty, the Handbook advises that "if the applicant's account appears credible, he should, unless there are good reasons to the contrary, be given *the benefit of the doubt*." UNHCR Handbook ¶ 196 (emphasis added).

Petitioners' reliance on the "benefit of the doubt" standard as set forth in the UNHCR Handbook is misguided for

several reasons. First and foremost, "the [UNHCR] Handbook is not binding on the INS or American courts." *Abdulai v. Ashcroft*, 239 F.3d 542, 553 (3d Cir. 2001). Second, the UNHCR Handbook sets forth procedures for determining refugee status, not for assessing the circumstances surrounding the late filing of an asylum application. Third, even if the UNHCR Handbook were binding and relevant to the timeliness determination, the "benefit of the doubt" standard has no application to the facts of this case since the IJ found that petitioner's account was implausible and lacking in credibility. *See* UNHCR Handbook ¶ 196 ("*if the applicant's account appears credible*, he should, unless there are good reasons to the contrary, be given the benefit of the doubt.") (emphasis added). For these reasons, we conclude that petitioners' claim that the IJ applied the wrong legal standard does not raise a colorable claim of legal error.[5] As a consequence, we need not reach the jurisdictional issue of whether their claim falls within the judicial review provision of 8 U.S.C. § 1252(a)(2)(D).

Petitioners' remaining argument is that the evidence in the record demonstrates changed circumstances materially affecting asylum eligibility or extraordinary circumstances relating to the delay, as required under 8 U.S.C. § 1158(a)(2)(D) to excuse the late filing. We must first determine whether this contention raises a "question[ ] of law" to which our jurisdiction extends, 8 U.S.C. § 1252(a)(2)(D),[6] or a factual or discretionary matter outside of our jurisdiction, 8 U.S.C. § 1158(a)(3).

An untimely application for asylum may be considered

---

[5] Petitioners also claim that the untimely filing should be excused because there was no evidence of intentional delay in the record. However, the absence of intentional conduct on the part of the asylum applicant in creating the circumstances which caused the delay is merely one element that the asylum applicant must prove to excuse a failure to file within the one-year deadline. 8 C.F.R. § 208.4(a)(5).

[6] Petitioners do not raise a constitutional challenge relating to the IJ's determination of untimeliness.

only "if the alien demonstrates to the satisfaction of the Attorney General" that she qualifies for an exception to one-year filing deadline.  8 U.S.C. § 1158(a)(2)(D).  This language requiring an asylum applicant to make a demonstration to the Attorney General's "satisfaction" implies that the Attorney General's determination entails an exercise of discretion.  *See  Vasile*, 417 F.3d at 768.  Petitioners' claim that she met her burden of demonstrating changed circumstances materially affecting asylum eligibility or extraordinary circumstances relating to the delay challenges that exercise of discretion.  Such a claim does not raise a constitutional claim or question of law covered by the REAL ID Act's judicial review provision.  We therefore agree with our sister courts that, despite the changes of the REAL ID Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse his untimely filing.  *Ramadan*, 427 F.3d at 1222; *Chacon-Botero*, 427 F.3d at 957; *Vasile*, 417 F.3d at 768-69.  Therefore, we conclude that we do not have jurisdiction to review petitioners' challenge.

## C.

Petitioners also argue that the IJ erroneously excluded evidence under 8 C.F.R. § 287.6, and that the evidence would have corroborated petitioner's testimony.  The authentication regulation of 8 C.F.R. § 287.6 provides, in pertinent part, as follows:

> In any proceeding under this chapter, an official record or entry therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized.... The attested copy, with the additional foreign certificates if any, must be certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept.

8 C.F.R. § 287.6.  In *Liu v. Ashcroft*, 372 F.3d 529 (3d Cir. 2004), we declared that "8 C.F.R. § 287.6 is not an absolute rule

12

of exclusion, and is not the exclusive means of authenticating records before an immigration judge." *Id.* at 533. In doing so, we adopted the government's reading of the authentication regulation, reasoning that while the government's reading might not have been the most obvious one, it was not plainly erroneous and, moreover, "asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor." *Id*. at 532 (internal citation and quotation marks omitted).

In this case, the IJ refused to give any weight to unauthenticated documentary evidence on the basis of section 287.6 alone, and failed to afford petitioner an opportunity to authenticate the documents through other means. In addition, the documentary evidence, if found to be genuine, would corroborate petitioner's testimony. For example, the address on petitioner's husband's identification card and the 1999 marriage certificate support petitioner's testimony that the reason she was in Unjung Pandang in September 1997 when the riots broke out was to meet her husband's family in anticipation of their eventual marriage. Because the documentary evidence, if considered, might have resulted in a favorable credibility determination, we find that remand is appropriate so that the authenticity of the documents[7] may be reconsidered, and, if found genuine, the credibility of the petitioner reevaluated for purposes of the withholding of removal claim.[8]

---

[7] *See* list of documents *supra* Part II. Based upon our review of the hearing transcript, it does not appear that petitioner's diploma, her husband's baptismal certificate, the religious marriage certificate, or their child's social security card was found inadmissible under 8 C.F.R. § 287.6, *see* R. at 70, although petitioners have indicated to the contrary on appeal. Our ruling herein would apply equally to those documents if they had been found inadmissible under 8 C.F.R. § 287.6.

[8] Petitioners do not specifically challenge the IJ's denial of relief under CAT, beyond mentioning in a footnote that the claim differs from claims for asylum and withholding of removal regarding burdens of proof and levels of harm required to merit

13

## D.

Petitioners also contend that the IJ's adverse credibility determination was not supported by substantial evidence. Adverse credibility determinations are reviewed under the substantial evidence standard. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). "We look at an adverse credibility determination to ensure that it was appropriately based on inconsistent statements, contradictory evidence, and inherently improbable testimony . . . in view of the background evidence on country conditions." *Dia*, 353 F.3d at 249 (internal citation and quotation marks omitted). An adverse credibility determination based on speculation or conjecture, rather than on evidence in the record, will be reversed. *Gao,* 299 F.3d at 272. "Where an IJ bases an adverse credibility determination in part on 'implausibility' as the IJ did here, such a conclusion will be properly grounded in the record only if it is made against the background of the general country conditions." *Dia*, 353 F.3d at 249.

In this case, the IJ made an adverse credibility determination with respect to three incidents of alleged persecution.[9] The IJ found incredible petitioner's presence "at all of these major events even though they were quite far apart in distance." (Decision at 10.) However, the IJ's adverse credibility determination was not based upon any evidence in the record, *Dia*, 353 F.3d at 249, but upon speculation and conjecture. Furthermore, as noted above, the evidence which the IJ erroneously excluded under 8 C.F.R. § 287.6, if found to be genuine, would corroborate petitioner's testimony. Accordingly, remand is appropriate so that the credibility issue bearing upon the withholding of removal claim may be reconsidered.

## E.

---

relief. We will therefore not entertain the CAT claim. *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993).

[9] *See* factual recitation *supra* Part I.

14

Next, petitioners assert that the IJ failed to consider whether there was a pattern or practice of persecution against Chinese and/or Christians in Indonesia. This issue was properly raised before the BIA, and, thus, the Court has jurisdiction to review it. *See* 8 U.S.C. § 1252(d)(1).

To establish a well-founded fear of persecution, an applicant must first demonstrate a subjective fear of persecution through credible testimony that her fear is genuine. *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). Second, the applicant must show, objectively that "a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." *Id.* To satisfy the objective prong, a petitioner must show he or she would be individually singled out for persecution or demonstrate that "there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion . . ." 8 C.F.R. § 208.13(b)(2)(iii)(A). Although the INA regulations do not define what conditions constitute a "pattern or practice of persecution," this Court has held that, "to constitute a pattern or practice, the persecution of the group must be systematic, pervasive, or organized." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (citation and internal quotation marks omitted). In addition, as with any claim of persecution, the acts must be committed by the government or forces the government is either unable or unwilling to control. *Id.* (citation and internal quotation marks omitted).

Here, the IJ found that petitioner had not established a well-founded fear of persecution, without specifically addressing whether a pattern or practice of persecution existed in Indonesia. Accordingly, on remand, petitioners' claim that there is a pattern or practice of persecution of Chinese Christians in Indonesia must be considered.[10]

_____

[10] Significantly, we do not hold that a pattern or practice of persecution in Indonesia in fact exists, nor do we hold that the *Lie* decision establishes that a pattern or practice does not exist since the record in this case contains a 2001 country report whereas the

15

Finally, petitioners contend that the IJ's conduct during the removal hearing violated their due process rights. As judicial officers, immigration judges have the "'responsibility to function as neutral and impartial arbiters' and 'must assiduously refrain from becoming advocates for either party.'" *Abdulrahman*, 330 F.3d at 596 (citations and internal quotation marks omitted). This requirement of neutrality is "especially important where, as in this class of cases, the determination of the trier of fact are subject to particularly narrow appellate scrutiny." *Id.* at 599.

In this case, in derogation of his responsibility to appear neutral and impartial, the IJ interjected intemperate and bias-laden remarks. While petitioner was testifying on cross-examination regarding her desire for her sister to come to the United States to obtain further education and a better job here, the IJ stated:

> Look for a better job. Ma'am she has no right to be here. You have no right to be here. All of the applicants that are applying for asylum have no right to be here. You don't come to the United States to look for a job! That's not the purpose of asylum. You don't come here to look for a job, or look for a house, or look for a better car, and than as an afterthought say, well, the only way I'm going to be able to stay here is if I can convince a Judge that I'm going to be persecuted. It's not the way the law works. Now, if you're telling your sister to come to the United States to pretend to be a student to have her come here, you're guilty of visa fraud. That is a felony. You can go to jail for that! You have to understand, the whole world does not revolve around you and the other Indonesians that just want to live here because they

record in *Lie* contained an earlier 1999 country report. *Lie*, 396 F.3d at 537.

16

enjoy the United States better than they enjoy living in Indonesia. It is not a world that revolves around you and your ethnic group.

We are deeply troubled by the IJ's remarks, none of which had any basis in the facts introduced, or the arguments made, at the hearing. There was no evidence adduced at the hearing that petitioner was seeking asylum only because she enjoyed the quality of life here better than that in Indonesia, nor was there any basis for the IJ's remarks that petitioner might be guilty of visa fraud. In particular, the IJ's statement that the "whole world does not revolve around you and the other Indonesians that just want to live here because they enjoy the United States" gives the appearance that the IJ has a predisposition to find against petitioner.[11]

"[E]ven if the IJ was not actually biased -- and we do not speculate here as to h[is]state of mind -- the mere appearance of bias on h[is] part could still diminish the stature of the judicial process []he represents." *Wang v. Attorney General*, 423 F.3d 260, 269 (3d Cir. 2005) (citation and internal quotation marks omitted). As stated by the Supreme Court, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 13 (1954). Thus, although we need not reach the due process issue, in order to ensure fairness and the appearance of impartiality, we strongly encourage that on remand, the BIA assign any further proceedings to a different IJ. *See Korytnyuk v. Ashcroft*, 396 F.3d 272, 287 n.20 (3d Cir.2005) ("[W]hile we recognize that the assignment of an [IJ] is within the province of the Attorney General, if on remand an IJ's services are needed, we believe the parties would be far better served by the assignment to those proceedings of a different IJ.") (citations and

---

[11] This is not the first time we have been troubled by the conduct of the IJ who presided over the proceedings in this case. In *Fiadjoe v. Attorney General,* 411 F.3d 135 (3d Cir. 2005), we reversed an adverse credibility determination made by Judge Donald Ferlise, finding that his questioning amounted to "bullying" and was "extreme[ly] insensitiv[e]," and his tone was "hostile and at times became extraordinarily abusive." 411 F.3d at 144, 154.

internal quotation marks omitted).

For the foregoing reasons, the petition for review will be granted, the order of the BIA vacated, and this case remanded for further proceedings consistent with the dictates of this opinion.