

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-18-2009

# Munir v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4174

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Munir v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1731.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1731

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4174
_____

NUR MUNIR,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A76-024-012)
Immigration Judge:  Donald Vincent Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 11, 2009

Before: BARRY, SMITH and HARDIMAN, Circuit Judges

(Opinion filed March 18, 2009)
_____

OPINION
_____

PER CURIAM

Nur Munir, a native and citizen of Indonesia, seeks review of a final order issued

by the Board of Immigration Appeals ("BIA").  For the reasons that follow, we will deny

the petition for review.

In February 1999, Munir was charged under 8 U.S.C. § 1182(a)(6)(A)(i) as being removable as an alien present in the United States without being admitted or paroled. He conceded removability and sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He also requested voluntary departure, in the alternative.

The Immigration Judge ("IJ") held an evidentiary hearing. In summary, Munir testified that after earning a university degree in Indonesia, in 1992, he traveled to Cairo, Egypt, to continue his studies at Al-Azhar University. He was an editor of several publications, and he was an active member of several student organizations, including PPMI, which the Indonesian Embassy considered to be violent. He testified that the embassy in Cairo employed him with the idea that the job would tame him. On May 10, 1998, then-President of Indonesia Soeharto visited the embassy and delivered a speech. Although the community of Indonesian students in Cairo organized a boycott of the event, Munir was required to attend as an embassy employee. The embassy maintained an audio recording of Soeharto's remarks, in which he expressed a willingness to step down from power. Munir took the recording and, a few days later, shared it with other students and journalists, including a journalist from Kompas, the largest daily newspaper in Indonesia. Soeharto's statement was published in Kompas, spurring violent student protests in Indonesia calling for Soeharto's resignation. Ultimately, Soeharto resigned on May 21, 1998. Meanwhile, Munir did not report to work, and he received a letter

2

ordering him to report to the military attache at the embassy. Fearful that he would be connected to the release of the recorded speech to the press, he briefly went into hiding and then fled Cairo. Leaving his wife behind in Egypt, Munir used an earlier-acquired entry visa and arrived in the United States in June 1998. His wife arrived in the United States in November 1998 on her own visa. Munir stated that he is afraid to return to Indonesia because many of Soeharto's supporters are still in positions of power, and he fears persecution for his role in Soeharto's overthrow.

Munir's wife testified at the hearing and corroborated Munir's story. She noted that Munir's friends came to their house in Cairo and informed her that the military attache of the embassy was looking for him. Fearing for her husband's safety, she stayed at a friend's house, then went to Damascus, Syria, wanting to distance herself physically from the military attache in Cairo. When she joined Munir in the United States, he appeared to be under stress, and she recounted that he left home for two months.

Andrew Stein, a practicing psychotherapist, also testified at the hearing. Stein stated that when Munir first came to see him in May 1999, Munir was extremely confused and was exhibiting behavioral ticks, which Stein attributed to extreme terror and anxiety. Stein testified that Munir's anxiety affected his ability to make decisions or act in his best interests. When the anxiety was contained, Munir expressed strong fears about the consequences to his family if they returned to Indonesia. Based on the eight and-a-half months of treatment with Munir, Stein's conclusion was that the trigger for Munir's

3

anxiety and terror was the event of having being summoned by Indonesian officials in Cairo for releasing the audio tape.

After a hearing, the IJ made an adverse credibility finding, denied all relief, and ordered Munir to be removed from the United States. The BIA affirmed, dismissing the appeal. The Board also denied a motion to reconsider. In November 2004, on Munir's petitions for review of both the BIA's orders, this Court granted the government's motion to remand the matter back to the BIA for reconsideration of the credibility finding. On September 28, 2007, on remand, the Board re-evaluated the credibility determination and found that Munir had testified credibly. However, the BIA again dismissed Munir's appeal, concluding that he had not met his burden of proof to show past persecution or a well-founded fear of persecution for purposes of obtaining asylum relief, that he therefore had not met the higher burden of proof for obtaining withholding of removal relief, and that he had not shown that it is more likely than not that he would be subject to torture with the Indonesian government's acquiescence.[1] This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Whether an applicant has demonstrated a well-founded fear of future persecution[2] is a factual determination reviewed under the substantial evidence standard. Voci v. Gonzales, 409 F.3d 607, 613

---

[1] The BIA conducted a de novo merits determination under the regulations in effect at the time of Munir's initial appeal.

[2] Munir does not challenge the agency's determinations regarding his eligibility for withholding or for CAT relief, so we deem those issues waived and will not address them.

(3d Cir. 2005).  We must affirm "unless the evidence not only supports a contrary conclusion, but compels it."  Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (citations omitted).  To establish a well-founded fear of future persecution, an applicant must demonstrate both subjective and objective fears of persecution.  Sukwanputra v. Gonzales, 434 F.3d 627, 637 (3d Cir. 2006).  The applicant may establish the subjective fear prong through credible testimony that his fear is genuine.  Id.  To show objective fear of persecution, the applicant must show that "a reasonable person in the alien's circumstances would fear persecution if returned to the country in question."  Id. (internal quotation and citation omitted).  The objective prong is satisfied if the petitioner either shows he would be individually singled out for persecution or demonstrates that "there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." Id. (quoting 8 C.F.R. § 208.13(b)(2)(iii)(A)).

There is record evidence that Munir's subjective fear and anxiety of persecution is genuine, and the government does not contest this assertion.  However, the factor of subjective fear does not compel a finding of objective fear.  Munir surmises that the embassy military attache summoned him for persecutory reasons after he failed to report to work following Soeharto's speech, but he does not establish that the attache or any other officials were even aware of his involvement in disclosing the audio tape to the

5

press. Munir points to nothing in the record that shows that other students or journalists involved in publishing Soeharto's remarks have been persecuted or are now targets for persecution, and he points to nothing that establishes that he would be singled out for persecution for his actions. The record supports the BIA's conclusion that Munir failed to meet his burden of proof.

Munir argues that the BIA violated his due process rights when it cited <u>Janusiak v. INS</u>, 947 F.2d 46 (3d Cir. 1991), and considered the contents of the 2006 State Department Country Report for Indonesia without giving him notice or opportunity to rebut the potentially dispositive, administratively noticed facts. In particular, Munir takes issue with the BIA's comment that the current political environment is not hostile to those who contributed to Soeharto's resignation. We find Munir's argument to be unpersuasive. With or without the newer version of the country report, it was Munir's burden to demonstrate that his fear of persecution was well-founded, and Munir identifies no record basis for the existence of an objective fear. The 2006 country report did not affect the BIA's decision in a dispositive way.

We have considered all of Munir's arguments and find them to be unavailing. We will deny the petition for review.

6