NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4234
_____

D.C.A.G.,
                                    Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                    Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A093-493-222)
Immigration Judge:  Alberto Riefkohl
_____

Submitted Under Third Circuit LAR 34.1(a)
December 9, 2011

Before:  HARDIMAN, BARRY, *Circuit Judges* and RUFE[*]*, District Judge*

(Filed: December 14, 2011)
_____

OPINION OF THE COURT
_____


HARDIMAN, *Circuit Judge*.

       Petitioner D.C.A.G., a native and citizen of Jamaica, appeals a decision of the

_____

       [*]  The Honorable Cynthia M. Rufe, District Judge for the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

Board of Immigration Appeals (BIA) that: (1) upheld the Immigration Judge's (IJ's) determination that D.C.A.G.'s asylum application was untimely and not subject to an exception under 8 U.S.C. § 1158(a)(2)(D); (2) did not disturb the IJ's grant of withholding of removal pursuant to 8 U.S.C. § 1231(b)(3); and (3) remanded proceedings to the IJ pursuant to 8 C.F.R. § 1003.1(d)(6). Because 8 U.S.C. § 1158(a)(3) prohibits our review of the IJ's and BIA's determinations of timeliness, we will dismiss D.C.A.G.'s petition for lack of jurisdiction.

I

Because we write for the parties, who are well acquainted with the case, we review only briefly its essential facts and procedural history.

D.C.A.G. suffered inhumane treatment while living in Jamaica: at age 13, he was raped repeatedly by a family member; at age 16 or 17, he was beaten by an anti-gay mob as police officers refused to intercede; at age 19 or 20, he was abducted by the police for several hours and, upon his release past the mandatory curfew, was brutally assaulted by a group of Jamaican soldiers who forced him to lie naked on a nest of ants, stood on his back, and sodomized him several times.

D.C.A.G. entered the United States on November 9, 2004, on a non-immigrant visa and overstayed the six-month period allowed by law. During his first years in the United States, D.C.A.G. learned that he was HIV-positive and that his longtime partner had been murdered in Jamaica. D.C.A.G. was hospitalized after attempting suicide and

2

was diagnosed with bipolar disorder and depression with psychotic features. A psychologist determined that D.C.A.G. also suffered from post-traumatic stress disorder (PTSD).

On January 2, 2008, D.C.A.G. was placed in removal proceedings following a 2007 arrest in New Jersey for presenting false documents during a traffic stop. On January 8, 2008, he applied for asylum, withholding of removal, and relief under the Convention Against Torture. Noting that D.C.A.G.'s application for asylum was untimely pursuant to 8 U.S.C. § 1158(a)(2)(B), the IJ evaluated the statute's time-bar exceptions. The IJ determined that, while D.C.A.G.'s HIV-positive diagnosis could constitute "changed circumstances" under 8 U.S.C. § 1158(a)(2)(D), the application had not been filed "within a reasonable period given those 'changed circumstances.'" 8 C.F.R. § 1208.4(a)(4)(ii)). The IJ also found that D.C.A.G. failed to demonstrate "that a serious mental disability prevented him from recognizing the importance of following the statutory procedures to apply for asylum or that he was somehow faced with challenges different from other asylum applicants in having to recount how he was persecuted in his country of origin." Accordingly, the IJ denied D.C.A.G.'s asylum application as time-barred. The IJ did, however, conclude that he was entitled to withholding of removal because he was likely to face persecution in Jamaica.

D.C.A.G. appealed, arguing that the IJ erred in failing to find that his circumstances warranted an exception to the one-year filing deadline. The BIA

3

disagreed, stating: "[e]ven if the respondent did demonstrate extraordinary circumstances . . . waiting over 3 years after his arrival to file his asylum application, or more than 2 years after his partner was killed, and not applying for asylum until he was detained and in proceedings, [was] not reasonable under the circumstances." Noting that the Government did not challenge the IJ's grant of withholding of removal, the BIA remanded to the IJ for proceedings pursuant to 8 C.F.R. § 1003.1(d)(6). The IJ entered a final order of removal on October 8, 2010, simultaneously granting D.C.A.G. withholding of removal.[1]

## II

Our jurisdiction is governed by § 242 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 (May 11, 2005), which authorizes us to review final orders of deportation, exclusion, or removal. Section 208(a)(3) of the INA, 8 U.S.C. § 1158(a)(3), strips us of jurisdiction to review the agency's determination that an alien's failure to apply for asylum within one year of his arrival in the United States was not due to

---

[1] When D.C.A.G. filed his petition for review on November 6, 2009, his case was still pending before the IJ. In his brief to this Court, D.C.A.G. argues that the BIA decision constituted a final order as to his asylum claim. On October 8, 2010, the IJ entered a final order of removal, which also granted D.C.A.G. withholding of removal. Because a premature notice of appeal from a non-final order may ripen upon the IJ's disposal of the remaining issues, *see Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 585–86 (3d Cir. 1999), we need not decide whether D.C.A.G. was correct in characterizing the BIA decision as a final order.

changed or extraordinary circumstances. *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006). "[D]espite the changes of the REAL ID Act, factual or discretionary determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review." *Id.* We may review only "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

D.C.A.G. raises neither constitutional claims nor questions of law. He argues that the IJ, and by extension the BIA, "erred by too narrowly applying the 'extraordinary circumstances' requirement" when, in discussing his PTSD, it ignored the fact that he suffered from "*multiple* [mental] disabilities," HIV, and the recent loss of a loved one. D.C.A.G. also claims that those same errors "precluded an individualized review of [his] case" and thus violated his due process rights.

While D.C.A.G. attempts to recast his challenges to the BIA's discretionary determination of untimeliness as constitutional claims, we have held that "challenges to the [agency's] extraordinary or changed circumstances determinations do not constitute 'questions of law' within the meaning of § 1252(a)(2)(D)." *Jarbough v. Att'y Gen. of the United States*, 483 F.3d 184, 189 (3d Cir. 2007). "[A]rguments such as that an Immigration Judge or the BIA incorrectly weighed evidence, failed to consider evidence or improperly weighed equitable factors are not questions of law under § 1252(a)(2)(D)." *Id.* Such claims concern the exercise of agency discretion and are not reviewable. *See Sukwanputra*, 434 F.3d at 635.

5

Because D.C.A.G.'s arguments challenge only the exercise of the BIA's discretion, we cannot review them.  Accordingly, we will dismiss his petition for lack of jurisdiction.