NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2661
_____

MEREGILDO TISTA-RUIZ
a/k/a Meregildo Ruiz,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
(BIA No.  A205-009-553)
Immigration Judge:  Steven A. Morley
_____

Submitted under Third Circuit LAR 34.1(a)
December 11, 2017

BEFORE:  RESTREPO, GREENBERG, and FISHER, <u>Circuit</u> <u>Judges</u>

(Filed: March 16, 2018)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I.  INTRODUCTION

Meregildo Tista-Ruiz petitions for review of a decision and order of the Board of Immigration Appeals ("BIA") entered June 12, 2015, affirming an Immigration Judge's ("IJ") order denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  For the following reasons, we will deny the petition.

## II.  BACKGROUND

Tista-Ruiz, a native and citizen of Guatemala, entered the United States in 2007 without being properly admitted.  In 2011, the Department of Homeland Security charged him with being removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he was not lawfully in this country.  In the ensuing proceedings, Tista-Ruiz conceded removability but the following year he applied for asylum, withholding of removal, and protection under the CAT.

In his application, Tista-Ruiz claimed that he had been persecuted in Guatemala because of his religion and his membership in a protected social group.  He claimed, in particular, that the Mara 18 gang targeted him in Guatemala because he is a Christian and belongs to a social group of people who resist Mara 18 gang recruitment.  He asserted that he had been attacked by gang members on two occasions, first in 2003 and again in 2007, and that they continued to threaten him after he left Guatemala.  He admitted, however, that he filed his application outside the one-year statutory deadline for an alien

2

to seek asylum after entry into this country under 8 U.S.C. § 1158(a)(2)(B). He, however, sought an exception from the deadline based on extraordinary circumstances as authorized by § 1158(a)(2)(D).

At a hearing before the IJ, Tista-Ruiz testified about the 2003 and 2007 attacks. He testified that in 2003, gang members confronted him at a local market and asked if he wanted to join their gang. He declined, telling them he was Christian and the gang's activities were against his beliefs. He testified that the gang members beat him, cut his hand with a knife, and took his money, and that during the attack, the gang members asked why "a son of God" could not defend himself. Moreover, they laughed at him because he identified himself as a Christian. AR 204. He also testified that he did not seek medical attention for the cuts and bruises he received in the 2003 attack because he could not afford the treatment. He explained that he did not notify the police of the attack because he feared that the gang would retaliate against him if he did so. It is significant that, following the 2003 attack, notwithstanding his injuries, he was able to walk three hours back to his house.

After testifying about the 2003 attack, Tista-Ruiz testified about the 2007 attack and its purported connection to his religion and refusal to join the gang. In testimony that echoed a 2013 affidavit, he testified that Mara 18 gang members attacked and robbed him at the same market at which they had attacked him in 2003, and attacked him again at his house later that day. On cross examination, however, the government confronted Tista-Ruiz with an earlier affidavit that he submitted in 2012 when he first filed his asylum application. In the earlier affidavit, Tista-Ruiz explained the 2007 attack differently than

3

he described it at the hearing. He stated in the affidavit that he got into "a huge argument" with his wife after learning she was cheating on him with a member of the Mara 18, he went to the market "to cool down" and was beaten and robbed by members of the gang, and back at home he encountered more gang members including his wife's lover. AR 445-46. There, he claimed, a gang member said, "so this is the big Christian man who wouldn't join our gang because he wants to yell and scream at women." AR 446. On cross examination, Tista-Ruiz admitted to the affair, the presence of his wife's lover, and the gang member's statement to him at his house.

Tista-Ruiz testified that following the 2007 attack he again did not seek medical attention. He did, however, report the attack to the police who told him to pay 250 quetzals to arrange a meeting with them, but he claims they never investigated the claim after he made the payment. Later in 2007, he left Guatemala and entered the United States illegally. After he left Guatemala until sometime in 2011, he sent money to his wife in Guatemala who had custody of their children. Tista-Ruiz testified that, in 2011 while he was in this country, someone called identifying himself as a "friend" and told Tista-Ruiz that he owed money to the so-called friend and threatened that "we'll be here when you get back to . . . the country." AR 229-32.

Tista-Ruiz also submitted affidavits from several family members in Guatemala. In one letter, Tista-Ruiz's uncle stated that the Mara 18 beat Tista-Ruiz so badly during the 2007 attack that he "nearly lost his life." AR 381. Other family members stated that Mara 18 gang members called or personally confronted them asking where Tista-Ruiz was and stated that they were waiting for him.

4

Finally, in support of his claim that extraordinary circumstances prevented him from filing his asylum application within the one-year period following his entry into this country, Tista-Ruiz submitted a psychiatric evaluation report prepared in 2012. The report stated that he was diagnosed with a major depressive disorder and PTSD, attributable in part to the attacks. He still receives treatment for those conditions as well as for Panic Disorder and Attention Deficit/Hyperactivity Disorder.

In July 2014, the IJ denied Tista-Ruiz's application. The IJ determined first that Tista-Ruiz was only partially credible. After reviewing Tista-Ruiz's testimony and corroborative evidence, the IJ determined that Tista-Ruiz's claim that he was a Christian and was attacked in 2003 and 2007 was credible, but the IJ found that Tista-Ruiz's claim that he was attacked because of his religion or refusal to join the gang was not credible. Thus, the asylum and withholding of removal claims failed.

The IJ also issued alternative findings. As to asylum, the IJ found that Tista-Ruiz did not show extraordinary circumstances to excuse his untimely application. Tista-Ruiz claimed that he did not know asylum was available, he did not trust the government, and his PTSD prevented him filing the application. The IJ rejected these claims for relief. The IJ found that Tista-Ruiz's claim for relief based on his PTSD was not credible because the condition described in the psychological evaluation report was not as severe as Tista-Ruiz claimed in the hearing, and that Tista-Ruiz admitted that he held a job during his first year in this country.

The IJ then found that Tista-Ruiz did not demonstrate a right to withholding of removal. The IJ found that his claimed social group was not a cognizable protected

5

group; that although Christianity is a protected religious group, Tista-Ruiz did not show the Mara 18 targeted him because of his faith; and he did not demonstrate that he was at risk of future persecution.

Finally, the IJ found that Tista-Ruiz was not eligible for protection under the CAT because he did not show it was more likely than not that the Guatemalan government would acquiesce to him being tortured.

Tista-Ruiz appealed but the BIA adopted and affirmed the IJ's decision. Tista-Ruiz then filed his petition for review with this Court.

## III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3) and (b)(9) and we have jurisdiction under 8 U.S.C. § 1252(a). Where, as here, the BIA adopts the IJ's findings and discusses some but not all of the underlying bases for the IJ's decision, we review both decisions. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We will uphold factual findings if they are supported by substantial evidence. Id. at 243.

## IV. DISCUSSION

Tista-Ruiz raises three challenges to the administrative decisions in his petition. First, he challenges the IJ's finding that extraordinary circumstances did not excuse his late filing of his application for asylum. Second, he challenges the IJ's credibility findings insofar as they relate to the 2003 and 2007 attacks. Third, he claims that he demonstrated a right to withholding of removal and relief under CAT. We conclude,

6

however, that none of these arguments has merit. Furthermore, we lack jurisdiction to review the denial of his asylum claim, the IJ's adverse credibility findings were supported by substantial evidence, and Tista-Ruiz has not demonstrated a right to relief under CAT.

A. Asylum

There is a one-year deadline after an alien enters this country for him to file an application for asylum, but his failure to file an asylum application during that period may be excused if the alien demonstrates "to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." Jarbough v. Att'y Gen., 483 F.3d 184, 188 (3d Cir. 2007) (quoting 8 U.S.C. § 1158(a)(2)(D)). But our authority to review the executive's determinations under § 1158(a)(2)(D) is limited as we have jurisdiction to review § 1158(a)(2)(D) determinations only if the petition for review raises constitutional claims or questions of law. 8 U.S.C. § 1158(a)(3); Sukwanputra v. Gonzales, 434 F.3d 627, 633 (3d Cir. 2006).

Tista-Ruiz argues that evidence in the record demonstrates that there were extraordinary circumstances under § 1158(a)(2)(D). In particular he claims that the psychiatric evaluation report of a PTSD diagnosis and his distrust of the government demonstrate extraordinary circumstances justifying extension of the one-year term for seeking asylum. But his arguments raise questions of fact, rather than constitutional claims or questions of law, so we lack jurisdiction to review the claims. However, because the one-year deadline for an asylum application after an alien enters the country does not apply to claims for withholding of removal or CAT claims, Abulashvili v. Att'y

7

Gen., 663 F.3d 197, 202 n.6 (3d Cir. 2011), we do have jurisdiction to review those claims to which we now turn.

B. Withholding of Removal and the Adverse Credibility Finding

Before reaching the merits of Tista-Ruiz's withholding of removal claim, the IJ made a threshold determination that Tista-Ruiz was not credible. In particular, the IJ found Tista-Ruiz was not credible in describing the 2007 attack, the connection between the 2003 and 2007 attacks and a protected ground, or the extent of his injuries. On appeal, the BIA agreed. For the reasons stated below, we will uphold the findings of the IJ and BIA.

We review the IJ and BIA's factual findings, including adverse credibility determinations, under the "substantial evidence" standard. Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003). We uphold findings of fact that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 815 (1992). We will uphold adverse credibility determinations unless "any reasonable adjudicator would be compelled to conclude to the contrary. . . ." Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)).

We conclude that there was substantial evidence supporting the IJ's adverse credibility findings. First, as noted by the IJ and BIA, Tista-Ruiz's omissions and inconsistent testimony concerning his wife's affair and its connection to the 2007 attack supports the adverse credibility finding. Tista-Ruiz's testimony and 2013 affidavit portray the 2007 attack as a continuation of prior incidents in which the Mara 18

8

allegedly targeted him because of his religion and refusal to join the gang. He also testified that he learned about his wife's affair when he arrived in the United States. That portrayal belies the version of events described in the 2012 affidavit, which casts the 2007 attack as a personal dispute between the gang members and Tista-Ruiz. It strongly suggests that the attack arose from his wife's affair with a gang member and the gang's allegation that Tista-Ruiz mistreated her during an argument earlier that day. Moreover, we have recognized that "retaliation in response to a personal dispute" does not present a sufficient nexus between persecution and a protected ground. Amanfi v. Ashcroft, 328 F.3d 719, 727 (3d Cir. 2003). Consequently, the IJ correctly found that the omitted information went to a central aspect of Tista-Ruiz's claims because it concealed a version of the attack that would not entitle him to relief. The IJ and BIA's finding that he did not testify credibly about his wife's affair and the 2007 attack was thus supported by substantial evidence.

Tista-Ruiz's counterarguments are unpersuasive. He asserts that his testimony and the 2013 affidavit sought merely to supplement the statements in the 2012 affidavit so there was no need to include the affair. He also admits to discovering his wife's infidelity on the morning of the attack, but asserts that he did not believe it until he learned more about it after he entered the United States. Neither explanation is persuasive. The affair and related statements are some of the only pieces of information omitted from the second affidavit and testimony. For example, in one of the more glaring omissions, the 2012 affidavit reads, "The man approached me and said, 'Oh so this is the big Christian man who wouldn't join our gang because he wants to yell and scream at

9

women.' The five other men started laughing and cursing at me. . . ." AR 446. On the other hand the 2013 affidavit stated, "The man approached me and said, 'Oh so this is the big Christian man who wouldn't join our gang because, [sic] the five other men started laughing and cursing at me. . . ." AR 314. And in his direct testimony, Tista-Ruiz made no mention of the affair and stated that he went to the market to "pick up [his] children," AR 206, whereas the 2012 affidavit said he went there to "cool down" after the "huge argument . . . because [he] could not believe that [his] wife would betray [him] like that," AR 445. The damaging nature of the omitted facts, and the selective removal of them from later submissions, supports the BIA and IJ's finding that the information was omitted in an effort to boost his claim.

Similar reasons undermine his second assertion that he credibly testified that the Mara 18 targeted him in 2003 and 2007 based on a protected ground. The IJ found that it was at best "unclear" why the Mara 18 first targeted him in 2003, and that he provided no credible evidence that his later encounters with the Mara 18 were motivated by his religion or refusal to join the gang. The evidence fairly supports those findings. As to the 2003 attack, the IJ found that the Mara 18 are notorious for assault and robbery; they approached him in the market; asked him personal questions including how much money he made; attacked him; took his money; and they typically recruit teenagers and children whereas Tista-Ruiz was 23 at the time. Based on this sequence, the IJ could correctly find that it is at least uncertain if the Mara 18 targeted him that day for any other reason

10

besides a random robbery.[1] The IJ also found, as mentioned above, that the attack in 2007 was likely motivated by a personal dispute, not a protected ground. Lastly, the IJ found that although gang members continued to contact his family asking for money, their interest in him likely stemmed from the fact that he continued to send money to his wife, who was involved with the Mara 18 gang member, until 2011 and not because they were motivated by his religion or refusal to join.

Tista-Ruiz challenges only one of these findings that undercut his credibility; i.e., the finding that he was too old to be recruited. He argues that he looks young and that the Mara 18 recruit men of all ages, though he cites no authority for the latter proposition. Even taking those facts as true, we still would not be compelled to find that Tista-Ruiz credibly established targeting based on a protected characteristic given the bulk of other factual findings, which Tista-Ruiz does not challenge, that undermine his claim.

Finally, substantial evidence supports the finding that Tista-Ruiz overstated his injuries. The IJ noted inconsistencies that undercut Tista-Ruiz's claim that he was severely injured. In his application, Tista-Ruiz claimed that he was "violently" and "severely" beaten, and almost "beaten to death." AR 423, 426. His uncle's affidavit stated that Tista-Ruiz "nearly lost his life" from the 2007 attack. AR 381. But Tista-Ruiz later testified that he suffered only cuts and bruises (a bloody nose and mouth, bruises,

---

[1] Tista-Ruiz did testify that the gang members mentioned his religion when they attacked him. But when weighed against the evidence suggesting the attacks were either commonplace robberies or motivated by a personal dispute, that fact does not compel the conclusion that the gang members attacked him on account of his religion. See Ndayshimiye v. Att'y Gen., 557 F.3d 124, 132-33 (3d Cir. 2009).

11

and a cut on his hands), he did not go to the hospital, and was able to walk three hours home after both attacks, and he provided no evidence of lingering injuries or broken bones. Taking these facts together, the IJ's conclusion that Tista-Ruiz suffered only minor injuries and embellished the severity of the harm was supported by substantial evidence.

In sum, we will not disturb the IJ and BIA's adverse credibility findings that supported the denial of Tista-Ruiz's withholding of removal claim because those findings were supported by substantial evidence in the record.[2]

C. CAT Claim

Finally, the IJ found that the CAT claim did not automatically fail just because the withholding of removal claim was not credible. AR 138 (citing Zubeda v. Ashcroft, 333 F.3d 463, 476 (3d Cir. 2003)). The IJ instead found, and the BIA agreed, that Tista-Ruiz failed to establish government acquiescence. We find no error with the IJ and BIA's determination that Tista-Ruiz did not show government acquiescence.

To qualify for relief under CAT, petitioners must establish that it is more likely than not that they would be tortured "with the consent or acquiescence of a public official or other person acting in an official capacity" if removed. 8 C.F.R. § 1208.18(a)(1). Acquiescence means a government official participates in or "turn[s] a blind eye to certain groups' torturous conduct. . . ." Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 70 (3d

_____

[2] The government also argues that the withholding of removal claim fails for another reason. It asserts that Tista-Ruiz waived any challenge to the IJ's holding that the gangs were not motivated by his religion and that his proposed particular social group was not cognizable. Because we find that the withholding of removal claim fails on credibility grounds, we do not reach the government's waiver argument.

12

Cir. 2007), as amended (Mar. 6, 2007). Unlike asylum and withholding of removal, CAT claims do not require a showing of torture on account of a protected ground. Lukwago v. Ashcroft, 329 F.3d 157, 183 (3d Cir. 2003).

The IJ found, and the BIA agreed, that Tista-Ruiz did not show government acquiescence. While he did show evidence of general police corruption in Guatemala, the IJ and BIA found that he did not show a probability that Guatemalan officials would acquiesce if Mara 18 members target him. In his petition, Tista-Ruiz contends that he showed acquiescence for two reasons. First, he argues that his past experience supports a finding that acquiescence will happen again. He notes in particular that he had to pay the police to investigate his 2007 beating but they did not do so. But even if we assume that his testimony on this point was credible, he has not shown that the police did not do anything to investigate the matter. After all, Tista-Ruiz testified that he left town the same day that he reported the incident to the police, AR 227, so he was not there to verify if they actually investigated. And he testified that he believes they did not investigate because "everyone . . . pretty much finds out" when they do. AR 228. Such speculative testimony does not establish that the police did not take steps to help him before he left.

Second, Tista-Ruiz argues that police acquiescence to Mara 18 violence is "prevalent" in Guatemala. Tista-Ruiz Br. 25. This argument also fails. While Tista-Ruiz has provided generalized evidence that Guatemalan officials struggle to control the country's gang problem, and that gang bribery of police does occur, these facts do not support a conclusion that the police acquiesced in the attacks on Tista-Ruiz. The IJ and

13

BIA accordingly did not err in determining that Tista-Ruiz failed to demonstrate that he likely would be tortured with the acquiescence of Guatemalan officials.

## V.  CONCLUSION

For the foregoing reasons, we will deny Tista-Ruiz's petition for review of the BIA decision and order of June 12, 2015, denying his application for asylum, withholding of removal, and CAT claims.