

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-7-2009

# Vasquez Madrigal v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1814

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Vasquez Madrigal v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1576.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1576

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IMG-024                                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1814

JOSE SANTIAGO VASQUEZ MADRIGAL,
                                                                Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                                Respondent

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A97-511-166)
Immigration Judge: Annie S. Garcy

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 18, 2009

Before:   MCKEE, NYGAARD AND ROTH <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 7, 2009)

OPINION

PER CURIAM

        Petitioner Jose Santiago Vasquez Madrigal, a native and citizen of Costa Rica, last

entered the United States on February 16, 1990.  During the time he lived and worked in

the United States his wife gave birth to three children.  Eventually he was detained by

immigration authorities, and he was served with a Notice To Appear for removal proceedings on April 14, 2004. Ultimately, he conceded that he was removable under an amended Notice to Appear, which charged under Immigration & Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182 (a)(7)(A)(i)(I) that he lack valid entry documents. Vasquez applied for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1), for certain non-permanent residents, or, in the alternative, voluntary departure.[1] He contended that his removal would present an exceptional and extremely unusual hardship to his three United States citizen children.

At his removal hearing on May 22, 2006, Vasquez testified that he was married and had three children. He entered the United States through Canada and has lived here continuously since February of 1990. He left Costa Rica when he was very young. If removed, he would have to start over again there, and he would not be able to provide as well financially for his children. They would suffer a lower standard of living. If they came with him to Costa Rica, they would not do as well in school because they would be regarded as foreigners. He would have to pay tuition in Costa Rica.

The government attempted to show that Vasquez was not a person of good moral character because he filed his federal income taxes under the wrong status. However,

---

[1] Cancellation of removal under INA § 240A(b)(1) is available to an alien who has been physically present in the United States for at least 10 years, has been a person of good moral character, has not been convicted of a specified criminal offense, and has established that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a United States citizen or lawful permanent resident. Id. at § 1229b(b)(1)(A)-(D).

2

several letters from friends, employers, and a school official attesting to the good character of the entire family also were submitted into evidence.

Julia Andrea Angulo, Vasquez's wife, then testified. She entered the United States in December of 1990. She was not in removal proceedings. Ms. Angulo testified that she and Vasquez raised their children together as a team. The family has never been separated. If Vasquez left, the children would be depressed. She and the children would not accompany Vasquez to Costa Rica, however, because the children would not want to leave the United States. When questioned by the IJ, Ms. Angulo acknowledged that the children were healthy, and did well academically, and two of them spoke a little Spanish. The children attend Catholic school and she and Vasquez pay tuition. Their two sons play soccer and baseball, and their daughter participates in a children's choir at church. The two older children have traveled to Costa Rica to visit their grandparents.

On the same day as the removal hearing, the IJ denied Vasquez's application for cancellation of removal. The IJ found insufficient evidence that his removal would result in "exceptional and extremely unusual hardship" to his three U.S. citizen children, the stringent standard he was required to meet. Vasquez had failed to make a case that the children would fair poorly if the entire family relocated to Costa Rica; he was not even certain about whether his children might have dual citizenship. The IJ was not inclined to rule that Vasquez did not have a good moral character based on the tax evidence, because, for example, the Internal Revenue Service never prosecuted him for improperly filing as head of household; she rested her decision solely on the "exceptional and extremely

3

unusual hardship" issue. She noted that, although Vasquez expressed uncertainty about how he would be able to support his children from abroad, he did not submit evidence of country conditions in Costa Rica, or evidence concerning whether he would be able to find employment there. Vasquez previously worked as a truck driver and landscaper, and he presented no evidence that his skills in this regard were not transferrable to Costa Rica.

As to the children, if they remained in the United States, the evidence showed that their mother would continue to love and support them. If they accompanied their parents to Costa Rica, they would continue to have the love and support of both parents. There was no evidence that Vasquez would be forced to divest himself of any real estate or assets that would damage his ability to support his family, and, should the children suffer a lower standard of living, either in the United States or abroad, this was not enough to justify relief under the standards applicable to the case, as set forth in Matter of Monreal, 23 I. & N. Dec. 56 (BIA 2001), for example. The IJ ordered Vasquez removed to Costa Rica, and granted him voluntary departure in the alternative.

Vasquez appealed to the Board of Immigration Appeals. On February 19, 2008, the Board dismissed the appeal on the basis of the hardship issue, for the reasons given by the IJ.[2] In addition to citing Matter of Monreal, the Board noted that the standards for relief also are set forth in Matter of Andazola, 23 I. & N. Dec. 319 (BIA 2002), and Matter of Recinas, 23 I. & N. Dec. 467 (BIA 2002), and did not warrant relief in

---

[2] The Board did not decide the good moral character issue and therefore we need not reach it.

4

Vasquez's case.[3]

Vasquez has timely petitioned for review. Prior to briefing, the government moved to dismiss the petition for review for lack of subject matter jurisdiction, and a motions panel of this Court referred the motion, without decision, to a merits panel pursuant to Third Circuit I.O.P. 10.3.5.

We will dismiss the petition for review for lack of subject matter jurisdiction. We have jurisdiction generally to review final orders of removal pursuant to INA § 242(a), 8 U.S.C. § 1252(a), but section 242(a)(2)(B)(i) of the jurisdictional statute, 8 U.S.C. § 1252(a)(2)(B)(i), divests us of jurisdiction over the Board's discretionary decisions regarding cancellation of removal under 8 U.S.C. § 1229b. See Mendez-Moranchel v. Ashcroft, 338 F.3d 176, 179 (3d Cir. 2003). To succeed on an application for

---

[3] Prior to the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), an alien could apply for suspension of deportation, where it was only necessary to show "extreme hardship." IIRIRA's standard of "exceptional and extremely unusual hardship" is less generous than the former standard. See Matter of Andazola, 23 I. & N. Dec. at 322; Matter of Recinas, 23 I. & N. Dec. at 470. In Matter of Monreal, 23 I. & N. Dec. 56, the Board found that, to establish "exceptional and extremely unusual hardship," an alien must show that the qualifying relative would suffer hardship substantially beyond that which would normally result from deportation. The applicant need not show that the hardship would be unconscionable. The Board will consider "the ages, health, and circumstances of qualifying ... relatives." Id. at 63. An applicant with financially dependent elderly parents would have a strong case and so would an applicant who had a qualifying child "with very serious health issues, or compelling special needs in school." Id. However, a "lower standard of living or adverse country conditions in the country of return ... generally will be insufficient." Id. The Board reaffirmed in Gonzalez-Recinas, that the "exceptional and extremely unusual" requirement is "not so restrictive that only a handful of applicants, such as those who have a qualifying relative with a serious medical condition, will qualify for relief." Id., 23 I. & N. Dec. at 470.

cancellation of removal an alien must establish, among other things, that removal would result in "exceptional and extremely unusual hardship" to a qualifying relative. We held in Mendez-Moranchel that this determination is a "quintessential discretionary judgment." Id. The Board, in reliance upon the IJ's more comprehensive decision, affirmed the denial of Vasquez's application for cancellation of removal based solely on a discretionary determination that he failed to establish that his removal would result in "exceptional and extremely unusual hardship" to his U.S. citizen children, see 8 U.S.C. § 1229b(b)(1)(D). This is an unreviewable decision.

Vasquez contends that the IJ violated his right to a full and fair hearing by failing to hear all relevant testimony and by implying that he did not meet the test for good moral character. We do not agree that these contentions give us jurisdiction. The REAL ID Act amended INA § 242(a) to provide for jurisdiction in the courts of appeals to review constitutional claims and questions of law raised by aliens whose petitions for review would otherwise be outside our jurisdiction, see INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D); Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006) (factual and discretionary determinations continue to fall outside our jurisdiction but 8 U.S.C. § 1252(a)(2)(D) would extend to question whether Board applied wrong legal standard in making discretionary determination). Vasquez points to no evidence that was not considered, and the IJ emphatically declined to find that he was not a person of good moral character. Furthermore, the Board applied the correct legal standard to his case.

We have carefully reviewed the evidence of record, but, as the IJ noted, Vasquez

6

could have produced evidence of country conditions, for example, or other evidence that he would not be able to find employment in Costa Rica. We conclude that nothing in the IJ's decision indicates that she did not take into account the required factors to determine that Vasquez failed to establish "exceptional and extremely unusual hardship" to his United States citizen children. We thus conclude that his quarrel is over the correctness of the factual findings and justification for the discretionary choices of the IJ and the Board, and we do not have jurisdiction to consider these arguments. 8 U.S.C. § 1252(a)(2)(B)(i); Mendez-Moranchel, 338 F.3d at 179.

For the foregoing reasons, we will dismiss the petition for review for lack of subject matter jurisdiction. The government's motion to dismiss is denied as moot.