**Parul PATEL, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 09–1281.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 27, 2010.

Opinion filed: Jan. 29, 2010.

Robert Frank, Esq., Frank & York, Newark, NJ, for Petitioner.

Thomas W. Hussey, Esq., Michael B. Mukasey, Paul F. Stone, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: BARRY, STAPLETON and NYGAARD, Circuit Judges.

## OPINION

PER CURIAM.

Parul Patel, a native and citizen of India, entered the United States before 1992 as a child. After the Government charged her with removability in 2006, she sought asylum, withholding, and protection under the Convention Against Torture ("CAT"). The Immigration Judge ("IJ") sustained the charge of removability and denied the applications for relief from removal. Specifically, he ruled that the asylum application was untimely, and denied the other applications based on an adverse credibility finding and, assuming credible testimony, a failure to satisfy the pertinent standards for relief.

Patel appealed to the Board of Immigration Appeals ("BIA"). The BIA agreed that Patel was ineligible for asylum because of an untimely filing. The BIA reversed the adverse credibility finding but dismissed the appeal. The BIA held that Patel had not shown that she was entitled to withholding or CAT relief. Patel presents a petition for review.

First, we address the scope of our jurisdiction over her petition. Although Patel includes arguments relating to the timeliness of her asylum application and her entitlement to asylum relief, we do not have jurisdiction over that question. *See Sukwanputra v. Gonzales,* 434 F.3d 627, 634 (3d Cir.2006). To the extent that her petition relates to that question, we will dismiss it. However, we otherwise have jurisdiction over her petition for review under 8 U.S.C. § 1252.

Because the BIA issued a decision separate from the IJ, we review only the BIA's ruling. *See Chavarria v. Gonzalez,* 446 F.3d 508, 515 (3d Cir.2006). We consider questions of law *de novo. See Gerbier v. Holmes,* 280 F.3d 297, 302 n. 2 (3d Cir. 2002). We review factual findings for substantial evidence. *See Butt v. Gonzales,* 429 F.3d 430, 433 (3d Cir.2005). On review, we conclude that the BIA did not err in denying Patel's applications for relief.[1]

Patel and her husband were born in the same city in India, but to different circumstances. R. 139 (Patel describing Ahmedabad as similar to New York City and her part of the town as the place where the housekeepers for the rich residents live). Although they were born into different castes, Patel and her husband met and married for love in the United States, against the wishes of Patel's husband's parents. Patel testified that her husband's parents disapproved of her. For instance, when her husband's mother came to visit before the wedding, she expressed her disappointment and acted as if her son could do better, R. 142, giving Patel a bad look and not responding to questions, R. 144. Patel also testified that she feared that her husbands' parents, with whom she would be obliged to live in India, R. 142, would "torture" or mistreat her because of her

---

1. Although the Government argues to the contrary, we do not agree that Patel waived a

challenge to the BIA's decision on her CAT claim, and we will consider it.

caste and because her parents did not provide a dowry, R. 137, 139, 146. She also stated that she feared being kicked out of her in-laws' house and having to fend for herself without knowing how to read or write Gujarati. R. 148–49.

Patel's husband testified that his parents are not happy about his marriage, R. 170, but that they tolerated it, R. 164. He also stated that his parents would not accept Patel because she is from a lower caste, R. 172, and that she will be "out of society," R. 173, yet not free to live elsewhere in India, R. 174. Her husband would not accompany her to India, R. 176, and he would not be able to change his parents' behavior, R. 180. He speculated that his parents may beat his wife (because they used to beat him). R. 184.

Patel also put forth a claim of a pattern and practice of persecution against women in India. She recollected witnessing, as a child, her aunt being beaten by her husband while her aunt's in-laws stood by unmoving. R. 134. She noted that her friend was mugged on a visit to India in 2005 and expressed a general fear of crimes and riots. R. 150. She also submitted articles about the treatment of women, including information about "dowry deaths," the killing of a bride by a groom's family for failure to pay a dowry. The 2006 Country Report on Human Rights Practices is also in the record (beginning at R. 374).

In India, Patel may be very uncomfortable living with her in-laws. In their community, she may face social ostracism. However, even her husband could not say that she would be tortured by his parents, who "tolerate" the marriage. Overall, Patel did not show a clear probability that she would be singled out for persecution on account of a protected ground. Nor did she prove her claim of a pattern or practice of persecution tolerated by the Indian government. According to the Country Report, domestic violence, including dowry deaths, remains a problem in India; however, new legislation addresses this serious issue. R. 400–01. Furthermore, Patel did not prove that it is more likely than not that she be tortured on her return to India.

For these reasons, the agency did not err in denying Patel's withholding and CAT claims, *see Zubeda v. Ashcroft,* 333 F.3d 463, 469 (3d Cir.2003); *Tarrawally v. Ashcroft,* 338 F.3d 180, 186 (3d Cir.2003); *cf. Wong v. Attorney Gen. of the United States,* 539 F.3d 225, 233 (3d Cir.2008). Accordingly, to the extent that we have jurisdiction over her petition, we will deny it.