**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1615
_____

ZEYD YUKSEL,
aka Zeyed Yuksel,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A97-517-023)
Immigration Judge: Mirlande Tadal

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 7, 2010

Before: AMBRO, CHAGARES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed May 21, 2010)
_____

OPINION
_____

PER CURIAM

Zeyd Yuksel has filed a petition for review of the final order by the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ"'s) denial of

Yuksel's requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

The parties are familiar with the background of this case, and so we provide only a summary of the proceedings. Yuksel is a native and citizen of Turkey who was admitted to the United States in December 2002 on a non-immigrant student visa. In May 2005, he was placed in removal proceedings for failing to comply with the conditions of his student status. He conceded removability. In October 2005, he applied for asylum, withholding of removal, and CAT relief. The IJ held an evidentiary hearing on Yuksel's claims on June 13, 2006.

Yuksel testified in support of his claims. He stated that he came to the United States to escape from the pressures in Turkey as a person of Kurdish ethnicity. He stated that the majority of people in his home village are Kurdish. Yuksel testified that both he and his father were active members of the Democratic People's Party (abbreviated "DHP"), a political party advocating Kurdish rights. He asserted that he joined the party in 2001, and that his father was a close friend of the president of the party at the time. Yuksel recounted that he distributed political leaflets, and that teachers made critical remarks and other students mocked him because he tried to defend Kurdish rights at school. Yuksel testified that his father was arrested, interrogated, and beaten by authorities when his father was scheduled to attend a DHP meeting, but he was unable to recall the exact date and instead approximated the date, saying that it happened when he

2

was about nineteen or twenty years old.

Yuksel stated that he personally experienced a situation with the Turkish police as well. He provided different dates for this event, varying between 2002 and 2001, before clarifying that the year was 2001. Police took him into custody in Yunak, where he was attending a political meeting with two cousins who were also members of the DHP. He was interrogated, with references to the Kurdish cause for statehood, was beaten, and was held for four days. Yuksel stated that his cousins were also arrested on the same day. Because his cousins were supposedly associated with a Kurdish terrorist organization known as the PKK (which he denied as being untrue), he fears returning to Turkey, believing that he would be mistreated as a PKK sympathizer. Yuksel also testified that he is unwilling to return to Turkey because he left Turkey without fulfilling his mandatory service obligation, and would be compelled to enlist upon his return, but he does not wish to fight against ethnic Kurds.

On cross-examination, Yuksel stated that he joined the political party in March 2001 and was arrested one or two months later. When asked why his testimony was inconsistent with the statement in his asylum application, he changed his testimony and stated that he was arrested in September 2002, after elections. He acknowledged that he did not seek any medical treatment for injuries sustained during the arrest and detention. Later in his testimony, Yuksel stated that he applied for his student visa in November 2002, a date verified in his passport, and that the application was made four or five months after his arrest. When asked about the discrepancies in his testimony regarding

3

the date of his arrest, he stated that he was "stunned at the date I gave." J.A. 185-86. When asked why his asylum application did not mention that his cousins were arrested on the same day, Yuksel stated that he did not remember that detail when he was completing the application and only remembered while he was giving his testimony. In addition to his testimony, Yuksel submitted documentation in support of his asylum application, including political party membership documentation, a newspaper article concerning the activism of one of his cousins, Amnesty International Reports for 2002-2004, and letters from his parents, his sister, his cousin, and his uncle.

The IJ concluded that Yuksel's asylum application was filed beyond the one-year statutory deadline and that no exception to the deadline applied. Further, the IJ determined that Yuksel lacked credibility and thus failed to meet the burden of proof for obtaining the relief sought. The IJ also found that, notwithstanding the adverse credibility finding, Yuksel did not meet his burden of establishing his eligibility for asylum, withholding, or CAT relief. The IJ ordered Yuksel's removal from the United States. On February 1, 2008, the BIA dismissed Yuksel's appeal. The BIA found no clear error in the IJ's decision, noting, inter alia, the record support for the conclusions regarding the untimeliness of the asylum application and the discrepancies in Yuksel's testimony and evidence relating to his and his family members' political activity. This petition for review followed.

First, we address the scope of our review. Although Yuksel argues that the BIA erred in concluding that he had not established that he falls within an exception to the

4

statutory deadline for filing the asylum application, and that he was entitled to asylum relief, we do not have jurisdiction over those issues. See Sukwanputra v. Gonzales, 434 F.3d 627, 633-34 (3d Cir. 2006). To the extent that the petition for review relates to the denial of asylum relief, we will dismiss it. However, we otherwise have jurisdiction over Yuksel's petition for review under 8 U.S.C. § 1252(a).

To the extent that the BIA deferred to the IJ's credibility findings, we will review the IJ's decision as supplemented by the BIA. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Credibility determinations are reviewed under the substantial evidence standard. See id. at 243. Adverse credibility determinations based on speculation or conjecture, rather than on record evidence, are reversible. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). The Court must uphold the credibility determination of the BIA unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Substantial evidence supports the adverse credibility determination.[1] For example, the BIA relied on the IJ's findings of inconsistencies within Yuksel's testimony and between his testimony and his asylum application regarding the date of his arrest and

---

[1] Yuksel's asylum application was filed after May 11, 2005, and thus the provisions of the REAL ID Act apply. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). The REAL ID Act provides that an adverse credibility determination can be based on inconsistencies, inherent implausibilities, inaccuracies, and other factors, without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). The inconsistences relied upon by the IJ in this case concerned matters that are central to Yuksel's claim.

detention for his political activities. Indeed, Yuksel's testimony repeatedly changed regarding the date, even when he was given the opportunity to clarify his response. Also, his testimony that his cousins were arrested on the same day that he was arrested differed from his account in his asylum application, in which he made no mention of his cousins' arrests. These inconsistencies concern an event that was purportedly pivotal in Yuksel's decision to flee to the United States. The record does not compel a contrary finding regarding credibility.

Finally, in support of his CAT claim, Yuksel cites to several pieces of evidence in the record, including news articles and other evidence of problems facing Kurds in Turkey, as well as his testimony that the situation became worse for the Kurdish people after the United States went to war in Iraq. Upon review, we discern no error in the agency's denial of relief on Yuksel's CAT claim because the record evidence does not compel the conclusion that he "more likely than not" would be subjected to torture if returned to Turkey. See Tarrawally v. Ashcroft, 338 F.3d 180, 187-88 (3d Cir. 2003); 8 C.F.R. § 208.16(c)(2).

Accordingly, to the extent that we have jurisdiction over the petition for review, we will deny it. The government's motion to dismiss the petition for review is denied.