**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1088
_____

GURWINDER SINGH,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-495-545)
Immigration Judge:  Honorable Dorothy Harbeck
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on November 17, 2010

Before:  BARRY, HARDIMAN and STAPLETON, Circuit Judges

(Opinion filed: November 30, 2010)
_____

OPINION
_____

PER CURIAM

Gurwinder Singh petitions for review of the order of the Board of Immigration

Appeals ("BIA" or "Board") dismissing his appeal of the Immigration Judge's ("IJ") final

removal order.  We will deny the petition.

## I.

Singh, a native and citizen of India, entered the United States in 2003 and was subsequently placed in removal proceedings for having entered without being admitted or paroled.  He conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") based on his experiences as a Sikh in India.[1]

At his January 2008 merits hearing, Singh testified before the IJ that he is originally from Punjab province and that he is a follower of the Sikh religion.  In addition, Singh claimed that he is a follower of the Khalistan Movement, a Sikh separatist movement.  His asylum application also indicated that he is a member of the Akali Dal Mann party.

Singh testified that, on three separate occasions while in India, he was subjected to persecution because of his religion.  Singh testified that, in 1994, he was arrested and detained at Temple and taken into custody.  While in custody, he was questioned about his affiliation with the Sikh movement.  In 1998, he claimed that he was arrested and detained by police at his home.  While at the police station, he was beaten all over his

---

[1]  In his opening brief, Singh explains that he did not, in fact, apply for  asylum, only withholding of removal and CAT relief.  (Pet. Br. at 9-10.)  However, the administrative record ("A.R.") shows that Singh filed an application seeking all three types of relief, (A.R. 395-410), and he does not point to any portion of the record demonstrating that he withdrew the application for asylum.

body and accused of being a terrorist. Although he was released when members of his village vouched for his peacefulness, he required medical treatment for his injuries. Finally, in December 2002, Singh testified that police arrested him at his home. He was beaten and burned in a nearby field and subjected to the same at the police station. After paying a bribe, he was released. Singh's brother provided an affidavit verifying the incident.

Singh testified that he left India four months after the final incident because he was concerned about his safety. Singh also testified about the likely persecution he faces if returned to India. According to Singh, although several years have passed since he left the country, the police in Punjab still seek to harm him. He also claimed that his wife and brother, who remain in the country, have told him that the police still question them about his whereabouts. However, he did not present affidavits from his wife or brother attesting to that fact. At the merits hearing, the Government argued that conditions in India have improved for Sikhs since Singh left the country such that he is unlikely to face persecution because of his religion upon his return.

Following the merits hearing, the IJ denied Singh's applications for relief. The IJ denied Singh's asylum application as time-barred and his applications for withholding of removal and CAT relief on substantive grounds. Although the IJ found that Singh testified credibly that he suffered past persecution, she concluded that the Government presented significant evidence of changed country conditions rebutting the presumption that he will be persecuted upon his return to India. The IJ also determined that there was

an absence of record evidence supporting Singh's claim that it is more likely than not that he would subject to torture upon his return.

On appeal, the BIA affirmed the IJ's ruling, including her finding that Singh's asylum application was time-barred. The Board also affirmed the IJ's credibility determination as well as her finding that Singh suffered past persecution. However, the Board determined that the IJ appropriately concluded that it is unlikely that Singh will be persecuted upon his return to India and thus, he did not qualify for withholding of removal. Lastly, the Board affirmed the IJ's CAT ruling. Singh timely appealed the BIA's determination.

II

We have jurisdiction pursuant to 8 U.S.C. § 1252(a).[2] "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review the agency's factual determinations for substantial evidence, and will uphold such determinations "unless the evidence not only supports a contrary conclusion, but compels it." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005) (internal citations omitted).

---

[2] We do not have jurisdiction to review the BIA's ruling that Singh's application for asylum was time-barred. 8 U.S.C. §1158(a)(3); Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006). As mentioned, Singh argues that he did not apply for asylum, only withholding for removal and CAT relief. The discrepancy does not matter for purposes of our review. Because we cannot review the denial of asylum for the reason that the BIA determined that it was untimely filed, it makes no difference, at this point, whether Singh actually sought such relief. We will review

Withholding for removal is available under INA § 241(b)(3).  To be entitled to statutory withholding of removal, an alien must prove that it is more likely than not he will be persecuted upon his return to the proposed country of removal.  See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 348 (3d Cir. 2008).  To meet this standard, the alien is required to establish (1) past persecution, which creates a rebuttable presumption of future persecution, or (2) a likelihood of future persecution.  See 8 C.F.R. § 208.16(b).  A presumption of future persecution may be rebutted by evidence demonstrating a fundamental change in country conditions.  See 8 C.F.R. § 1208.16(b)(1)(i).  To obtain CAT relief, an alien is required to demonstrate that it is more likely than not he will be tortured if removed to the proposed country of removal.  See 8 C.F.R. § 208.16(c)(2).

Singh raises the following arguments in his petition for review: (1) the record does not establish changed country conditions and the IJ failed to appreciate the "entirety of the 2006 Country Report on Human Rights Practices"; (2) the IJ erroneously concluded that country conditions had changed based upon a purported change in India's political power structure; and (3) the IJ misapprehended the difference between two political parties and erroneously concluded that Singh's political party was represented in the People's Assembly.  (Pet. Br. at 11-13.)

We note that Singh benefitted from the rebuttable presumption of a well-founded fear of future persecution.  8 C.F.R. § 208.16(b)(1)(i).  This was so because he presented credible evidence establishing past persecution before the IJ.  Therefore, we must

only the BIA's denial of withholding of removal and CAT relief.

determine whether the record compels reversal of the Board's affirmation of the IJ's ruling that evidence of changed country conditions rebutted the presumption.

The IJ and BIA reviewed a significant number of reports and articles describing changed circumstances for Sikhs in India. (A.R. 3-4, 66-67.) Although Singh argues that the IJ and BIA failed to "appreciate" the entirety of the U.S. Department of State's 2006 Report on Human Rights Practices for India, the record suggests otherwise. Indeed, the Board specifically noted that, with regard to human rights abuses, while the Report indicates that "government officials continue to use excess force in Jammu and Kashmir and several other northeastern states, [it] does not indicate that there is any continuing conflict in Punjab." (A.R. 3, 310-11.) The Board also noted that in the section of the Report discussing freedom of religion, there is no suggestion that there has been any recent harm perpetrated against Sikhs in Punjab. (A.R. 315-16.) The IJ and BIA cited other reports in the record supporting the Government's position. For example, they reviewed the U.S. Department of State's 2006 International Religious Freedom Report for India which indicated that, although many of those who were involved in anti-Sikh violence in the 1980s and 1990s have not been prosecuted for their actions, there have not been any significant recent acts of violence perpetrated against Sikhs. (A.R. 3, 66-67, 277-97.)

We also find Singh's second argument unconvincing. Singh argued that the IJ improperly concluded that having a Sikh Prime Minister is significant to the current plight of Sikhs in India. Singh does not cite any record evidence supporting his

contention that this particular change in political power is insignificant. Indeed, the current prime minister, Dr. Manmohan Singh, a Sikh from Punjab, was sworn into office more than a year after Singh departed India, thus supporting, at least in part, the IJ's conclusion that conditions have improved for Sikhs as a result of this political change. (A.R. 66, 273.)

Singh also fails to adequately support his final argument. He claims that the IJ misapprehended the difference between the Akali Dal Mann party, of which he is a part, and the Shiromani Akali Dal ("SAD") party. In her opinion, the IJ noted that the Central Intelligence Agency World Factbook for India indicates that eight percent of the People's Assembly is represented by the SAD party. (A.R. 66, 273.) Singh argues that the parties are not the same and that members of the Akali Dal Mann lack representation in the Assembly. However, he provides absolutely no analysis of the differences in the parties. Regardless of the asserted distinction, Singh does not dispute that a Sikh political party is now represented in the Assembly and that this political development evidences a change in conditions for Sikhs. Moreover, to the extent that the IJ erred in making this finding, we determine that the error is not significant enough to require reversal.

Accordingly, we conclude that substantial evidence in the record supports the agency's determination that the Government rebutted the presumption of future persecution. We further conclude that Singh has not shown that the record compels vacating the BIA's ruling on his CAT claim. We agree with the Board that Singh has not established that it is "more likely than not that that he will be tortured upon return to

India." (A.R. 4.)

We will deny the petition for review.