NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2966
_____

MAHESH JULKA; BHAWANA JULKA, a/k/a Anjana; ATUL JULKA

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

Mahesh Julka; Bhawana Julka; Atul Julka,

Petitioners

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Michael W. Straus
(Nos. A200-176-416, A200-176-417, A200-176-418)
_____

Submitted Under Third Circuit LAR 34.1(a)
April 4, 2016

Before: AMBRO and KRAUSE, <u>Circuit Judges</u>
and THOMPSON,♦ <u>District Judge</u>

(Opinion filed: May 6, 2016)

_____

♦ Honorable Anne E. Thompson, Senior District Judge, United States District Court of
New Jersey, sitting by designation.

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Petitioner Mahesh Julka challenges a decision by the Board of Immigration Appeals ("BIA") dismissing the appeal from the Immigration Judge's ("IJ") denial of applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We conclude that we are without jurisdiction to consider some of Julka's arguments and, with respect to those that we can consider, substantial evidence supported the BIA's decision. Accordingly, we dismiss in part and deny in part the petition for review.

I.

Julka, his wife Bhawana, and their child Atul, are natives and citizens of India. On August 10, 2008, they were admitted to the United States with authorization to remain for a temporary period not to exceed February 9, 2009. They remained in the country well past this date. In July 2011, Julka, with the assistance of counsel, filed an application for asylum, naming his wife and child as derivative beneficiaries. In sum, Julka alleged that he was a member of the Congress Party and that he feared persecution from the rival Akali Dal Party if he were to return to India. He contended that, after he joined the Congress Party in 2000, he was threatened and beaten on several occasions by Akali Dal Party members and police officers loyal to the Party. The police also allegedly

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

detained Julka and his family for several hours in December 2005. While the family was in custody, police denied Julka's request for medical attention for his first child and, the child died a few hours after police released the family. Julka also alleged that in December 2005 the police falsely accused him of vehicular homicide and that the charges appear online in a "national database." In November 2011, Julka requested further relief in the form of withholding of removal and protection under the CAT.

After an April 2012 hearing before the IJ at which Julka testified and was represented by counsel, the IJ issued an oral decision denying the applications for asylum, withholding of removal, and protection under the CAT. The IJ found that Julka was not credible in his testimony, that his asylum application was untimely, and, even assuming credibility, that he had not established a well-founded fear of future persecution or a likelihood of his being tortured.

Julka appealed to the BIA. It affirmed the denial of asylum because the application was untimely. It also affirmed the denial of withholding of removal and protection under the CAT because the adverse credibility determination was not clearly erroneous and, setting aside Julka's credibility, he had not satisfied his burden of proof on his claims to stave off removal. This petition for review followed, along with a motion for a stay of removal that we granted.[1]

II.

_____

[1] In January 2016, Julka submitted an unopposed motion to cancel oral argument and submit the case on the briefs. We will grant the motion.

3

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3) and we exercise jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a). We do not have jurisdiction to review the determination that an asylum application was untimely. 8 U.S.C. § 1158(a)(3). We review factual findings, including adverse credibility determinations, for substantial evidence, *Butt v. Gonzales*, 429 F.3d 430, 433 (3d. Cir. 2005), which is lacking where the evidence "was so compelling that no reasonable factfinder could fail to find" the alien eligible for relief. *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 483–84 (1992).

III.

Julka first challenges the BIA's decision that his asylum application was untimely. The one-year deadline for filing that application may be excused if the alien demonstrates "to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." *Jarbough v. Att'y Gen.*, 483 F.3d 184, 188 (3d Cir. 2007) (quoting 8 U.S.C. § 1158(a)(2)(D)). We do not have jurisdiction to review the executive's determination of whether an alien has shown changed or extraordinary circumstances, though we can still consider constitutional claims or questions of law raised in a petition for review. *Sukwanputra v. Gonzales*, 434 F.3d 627, 633 (3d Cir. 2006).

Julka's asylum application was untimely (he arrived in the United States in August 2008 and did not apply for asylum until June 2011).[2] In the application, he explained that in 2008 he had paid an attorney to prepare an asylum application, but the attorney later refused to file. Julka found another lawyer in 2011 to assist him in applying for asylum. At the hearing, Julka also testified that just before applying for asylum he found the allegedly false charges of vehicular homicide online in a "national database." The IJ concluded that Julka's application was untimely and that his claim of attorney negligence was not an extraordinary circumstance. On appeal to the BIA, Julka argued that the discovery of the national database was a ground for excusing the one-year deadline. The BIA concluded that Julka had not demonstrated changed or extraordinary circumstances.

In his petition for review, Julka argues that the BIA "overlooked" his claim for changed circumstances as an exception to the one-year deadline and tries to shoehorn this argument into a constitutional claim that the BIA deprived him of due process. But "[w]e are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim." *Jarbough*, 483 F.3d at 189. The substance of Julka's argument is that the IJ and the BIA "got the facts wrong" and we thus have no jurisdiction to review the timeliness of the asylum application. *Id.* at 190.

Julka next argues that the BIA erred in upholding the IJ's adverse credibility determination. Substantial evidence supports the determination, however. As background, the IJ found Julka lacked credibility because his testimony about being

---

[2] The one-year deadline for asylum applications "does not apply to requests for withholding of removal or relief under the CAT," and Julka's request for these forms of relief was not untimely. *Abulashvili v. Att'y Gen.*, 663 F.3d 197, 202 n.6 (3d Cir. 2011).

targeted for reprisals by a rival political party was implausible. It was unclear to the IJ why police officers would act as agents of the Akali Dal Party and attack Julka with impunity over such a long period of time in order to force him to join the Party. Julka did not hold any leadership positions in the Congress Party and, by his own admission, he merely helped other party members. He did not know of any other Congress Party members or leaders that had been attacked. Moreover, many of the alleged attacks took place when the Congress Party controlled the Punjab state where Julka lived. Finally, the IJ explained why the documentary evidence Julka submitted did not support his credibility. For example, one of the alleged police reports noted that Julka was arrested illegally and the IJ found it strange that the police would admit to an illegal arrest in the police report. And a letter from the Congress Party lacked any supporting detail and only noted that Julka was a member.

Finally, Julka challenges the denial of withholding of removal and protection under the CAT. To be eligible for withholding of removal, he needed to demonstrate that it was more likely than not that his life or freedom would be threatened in India on account of a protected ground. 8 C.F.R. § 208.16. He can establish a presumption of a future threat to life or freedom by proving past instances of persecution. *Id.* § 208.16(b)(1). The BIA affirmed the IJ's denial of withholding of removal because, even assuming that Julka had established a presumption of future persecution, the IJ found that Julka could relocate to another part of India. *See Wang v. Gonzales,* 405 F.3d 134, 139 (3d Cir. 2005). Substantial evidence supported this conclusion. If Julka were a target of local police loyal to the Akali Dal Party, he could avoid future persecution by moving to

6

a part of India where the Party has no foothold. Julka had argued that the false criminal charges prevented his relocation, but the IJ noted that Julka failed to present evidence to corroborate the status of those charges and that, in any event, he could relocate and still fight the charges in India.

For protection under the CAT, Julka needed to demonstrate that it was more likely than not that he would be tortured if removed to India. 8 C.F.R. § 208.16(c)(2). The BIA affirmed because, even if it assumed Julka's credibility, the record did not establish the likelihood of his being tortured. Substantial evidence supported its decision because the IJ found that Julka could safely relocate to another part of India. *See id.* § 208.16(c)(3)(ii) (evidence of possible relocation is relevant to assessing whether applicant has shown likelihood of torture).

*     *     *     *     *

Because we lack jurisdiction over part of Julka's petition, and as the BIA's decision to deny Julka's requests withholding of removal and protection under the CAT was supported by substantial evidence, we dismiss in part and deny in part the petition for review.