**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2664
_____


JIGAR RAJESH KUMAR PATEL,
aka Darrell Gilliam,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of the Immigration Appeals
(Agency No. A206 907 928)
Immigration Judge: Kuyomars Q. Golparvar


_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 13, 2018

Before: CHAGARES, VANASKIE, <u>Circuit</u> <u>Judges</u>, and BOLTON, <u>District</u> <u>Judge</u>*.

(Filed: May 3, 2018)
_____

OPINION[1]
_____

---

* The Honorable Susan R. Bolton, Senior United States District Judge for the District of
Arizona, sitting by designation.
[1] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

BOLTON, <u>District</u> <u>Judge</u>.

Jigar Rajesh Kumar Patel ("Patel") petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal from an Immigration Judge's ("IJ") order denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We will deny the petition.

**I**

Patel is a native and citizen of India. He came to the United States on a student visa in 2008. He returned to India in 2011 to get married and complete a visa application. On January 5, 2012, Patel re-entered on an H-1B visa and got a job as a pharmacy technician. On July 25, 2013, federal officers arrested Patel and four colleagues for fraud. United States Citizenship and Immigration Services revoked Patel's visa on April 2, 2014. He pled guilty and was sentenced to 13 months' imprisonment on January 15, 2015. After serving 11 months, Patel was released into U.S. Immigration and Customs Enforcement custody. His conviction was vacated on March 8, 2017.

The Department of Homeland Security ("DHS") initiated removal proceedings on December 14, 2015. DHS charged two grounds for removability: (1) conviction of a crime involving moral turpitude within five years of admission and (2) remaining in the United States beyond the time permitted after admission as a non-immigrant. Patel conceded removability on both grounds. He filed applications for asylum, withholding of

removal, and CAT protection on April 25, 2016. A hearing was held on December 12, 2016.

Patel is a Hindu and supporter of the Indian Congress Party ("ICP"). The Bharatiya Janata Party ("BJP") is currently in power in India and is hostile toward Muslims. Patel testified about four instances of persecution by BJP members and police—three while Patel was still in high school. First, when he was volunteering at an ICP-led effort to help earthquake victims in 2001, police beat Patel, took him to jail, and discouraged him from helping Muslims. Second, after a train attack in 2002, the government blamed Muslims. After riots broke out in Patel's hometown, a Muslim friend named Sarfarosh asked for help. Patel invited Sarfarosh and his mother to hide in his home. Individuals in BJP apparel came to Patel's house that evening and accused Patel of harboring the family of a terrorist.[2] Although Patel did not let them into his home, the group broke his father's scooter, windows, and other property. Two days later, after Sarfarosh and his mother had left, police arrived, searched Patel's house, and took him into custody for three days. They accused Patel of sheltering Muslims and interrogated him about Sarfarosh's family. Officers beat him, burned him with a cigarette, hung him upside down, and threatened to kill him. Third, after an attack on a Hindu temple in 2002, police arrested Patel again and interrogated him about Sarfarosh's family for three days. They beat him with a belt, covered his head, urinated on him, removed his clothes, and bound his hands. Fourth, police stopped Patel and his father in 2006, and interrogated

---

[2] Authorities apparently suspected that Sarfarosh's father was a terrorist.

them about Sarfarosh's family for two days. Officers kicked and beat him, and he suffered a head injury. Patel had no further incident with the police after 2006.

The IJ denied Patel's applications and ordered him removed to India. The IJ first held Patel had not timely filed his asylum application nor demonstrated "extraordinary circumstances" warranting an exception. The IJ also considered the merits of the asylum claim "for the sake of [a] thorough decision." (App. 49.) He agreed Patel had shown past persecution, but found it was not attributable to a protected ground. He instead found the persecution was related to Patel's association with Sarfarosh. This finding, in turn, foreclosed withholding of removal. Finally, the IJ denied Patel's CAT claim because Patel had not shown he would more likely than not be tortured if he returned to India. Country conditions had improved; more than a decade had passed; and Patel had since returned to India without incident.

Patel appealed to the BIA, which affirmed. He timely petitioned for review of the BIA's decision.

## II

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). "Because the BIA issued its own decision, we review that decision, and not that of the IJ." *Sheriff v. Att'y Gen.*, 587 F.3d 584, 588 (3d Cir. 2009). We review the BIA's legal determinations *de novo* and its findings of fact for "substantial evidence." *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 590 (3d Cir. 2011). Under this deferential standard, we must affirm the BIA "unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483–484 (3d Cir. 2001).

4

# III

Patel makes three arguments. First, he maintains that prosecutorial misconduct in his criminal case constituted "extraordinary circumstances" warranting an exception to the one-year rule for asylum applications. Second, Patel contends he is more likely than not to be tortured if he is returned to India. Third, he argues the denial of his applications is a violation of the Due Process Clause of the Fifth Amendment.

Patel's first and third arguments are readily addressed together. We are statutorily barred from reviewing BIA decisions concerning the timeliness of asylum applications. *See* 8 U.S.C. § 1158(a)(3); *Sukwanputra v. Gonzales*, 434 F.3d 627, 633 (3d Cir. 2006) ("Congress did not authorize an opportunity for judicial review of determinations made by the executive branch regarding the timeliness of an asylum application."). Indeed, the Constitution requires no judicial review of deportation decisions whatsoever. *See id.* at 632. ("Deportation is not a criminal proceeding and has never been held to be punishment, and thus no judicial review is guaranteed by the Constitution.") (quotations and modifications omitted). Our role is a legislative, rather than constitutional, creation. Thus, we will not disturb the BIA's decision on the untimeliness of Patel's asylum application. And because judicial review is not constitutionally mandated, the denial of Patel's applications cannot violate the Due Process Clause.

Patel's remaining argument is similarly fated. An alien is eligible for CAT protection if he can prove it is more likely than not that he will be tortured if removed to the proposed country. *Lukwago v. Ashcroft*, 329 F.3d 157, 182–83 (3d Cir. 2003). The

likelihood component is a factual inquiry, not a legal one.[3] *See Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010). The BIA cited the IJ's reasoning. More than a decade had passed since Patel's last incident with police. This included a two-year stay with family in another part of India before coming to the United States as a student, and a later visit to complete his visa process, get married, and go on a honeymoon. Country conditions had improved since the riots, and Patel's father had not been harmed for aiding Sarfarosh's family since 2010.[4] Patel does not deny this. Instead, he stresses the issue of government acquiescence. But if torture is not likely, that question is moot. We cannot say, then, that the BIA lacked substantial evidence to deny CAT protection.

Finally, though Patel does not separately raise it in his brief, we briefly address the denial of withholding of removal. To qualify, "an alien must show that if returned to his country, it is more likely than not that the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." *Amanfi v. Ashcroft*, 328 F.3d 719, 726 (3d Cir. 2003). The BIA agreed that while Patel had shown past persecution, there was no nexus to a protected ground. The Board found no error in the IJ's finding that Patel's past persecution was attributable to his association with Sarfarosh, and not his religion, political opinion, or membership in a particular social group. We agree.

**IV**

---

[3] We will assume without finding that the type of treatment Patel claims he would endure rises to the level of torture.

[4] The IJ did note, however, that Patel's father had been beaten in 2015 for his participation in a political protest.

6

On January 8, 2018, this Court ordered supplemental briefing on three issues: (1) whether Patel's criminal conviction had been vacated; (2) whether an alien can overstay an admission period if he is prevented from leaving the country due to the surrender of his passport before the visa's expiration; and (3) whether the Government would agree to a joint motion to reopen proceedings before the BIA. The parties' responses do not alter our decision. The Government declined to join a motion to reopen because Patel never raised his vacated conviction or inevitable visa overstay to challenge his removability. Patel similarly believes reopening would be futile. Though Patel acknowledges his conviction was vacated and thinks overstaying his visa was inevitable because he had surrendered his passport, he expresses no desire to challenge his removability or leave the United States voluntarily.

## V

We will accordingly deny the petition for review.